

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE AUG 2 0 2015
Madsen, C. J.
CHIEF JUSTICE

This opinion was filed for record
at 8:00 AM on Aug. 20, 2015

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| ROCIO TRUJILLO, | NO. 90509-6 |
| Petitioner, | |
| v. | EN BANC |
| NORTHWEST TRUSTEE SERVICES, INC., | |
| Respondent; | Filed AUG 2 0 2015 |
| WELLS FARGO BANK, NA, | |
| Defendant. | |

GORDON McCLOUD, J.— Rocio Trujillo's home loan was secured by a deed of trust encumbering the home. She defaulted, and Northwest Trustee Services Inc. (NWTS), the successor trustee, sent a notice of default and scheduled a trustee's sale of her property. Under the deeds of trust act (DTA), a trustee may not initiate such a nonjudicial foreclosure without "proof that the beneficiary [of the deed of trust] is the *owner* of any promissory note . . . secured by the deed of trust." RCW 61.24.030(7)(a) (emphasis added). But the very next sentence of that statute says,

"A declaration by the beneficiary made under the penalty of perjury stating that the beneficiary is the actual *holder* of the promissory note or other obligation secured by the deed of trust shall be sufficient proof as required under this subsection." *Id.* (emphasis added).

NWTS had a beneficiary declaration from Wells Fargo Bank. It did not contain that specific statutory language. Instead, it stated under penalty of perjury, "Wells Fargo Bank, NA is the actual holder of the promissory note . . . *or* has requisite authority under RCW 62A.3-301 to enforce said [note]." Clerk's Papers (CP) at 36 (emphasis added). This declaration language differs from the language of RCW 61.24.030(7)(a), quoted above, by adding the "or" alternative.

Following our recent decision in *Lyons v. U.S. Bank National Ass'n*, 181 Wn.2d 775, 336 P.3d 1142 (2014), we hold that a trustee cannot rely on a beneficiary declaration containing such ambiguous alternative language. Trujillo therefore alleged facts sufficient to show that NWTS breached the DTA and also to show that that breach could support the elements of a Consumer Protection Act (CPA) claim. Ch. 19.86 RCW. However, her allegations do not support a claim for intentional infliction of emotional distress or criminal profiteering. We therefore reverse in part and remand for trial.

## FACTUAL ALLEGATIONS[1]

In 2006, Trujillo took out a loan for $185,900 from Arboretum Mortgage Corporation to buy her home. This loan was evidenced by a promissory note secured by a deed of trust dated March 29, 2006 encumbering the home. CP at 17.[2] The deed of trust was recorded in King County on March 31, 2006. *Id.*

Arboretum sold this loan to Wells Fargo in 2006. CP at 86. Wells Fargo sold the loan to Federal National Mortgage Association (Fannie Mae) and retained the loan servicing rights. *Id.*

In 2012, Arboretum assigned the deed of trust to Wells Fargo. CP at 35. The assignment was recorded in King County on February 2, 2012. *Id.*

---

[1] When reviewing the denial of a CR 12(b)(6) motion, we presume that the complaint's factual allegations are true. *Reid v. Pierce County*, 136 Wn.2d 195, 201, 961 P.2d 333 (1998).

[2] Some of these allegations are taken from documents contained in the record that are not part of the complaint, but the complaint references these documents. "Documents whose contents are alleged in a complaint but which are not physically attached to the pleading may . . . be considered in ruling on a CR 12(b)(6) motion to dismiss." *Rodriguez v. Loudeye Corp.*, 144 Wn. App. 709, 726, 189 P.3d 168 (2008). Further, where the "basic operative facts are undisputed and the core issue is one of law," the motion to dismiss need not be treated as a motion for summary judgment. *Ortblad v. State*, 85 Wn.2d 109, 111, 530 P.2d 635 (1975). Here, the trial court entered an order granting NWTS's motion to dismiss under CR 12(b)(6). The supporting documents the trial court considered were alleged in the complaint, and the "basic operative facts are undisputed and the core issue is one of law."

Trujillo admits that she defaulted on her loan on November 1, 2011. CP at 86.

Then, in a beneficiary declaration dated March 14, 2012 and delivered to NWTS, Wells Fargo stated, "Wells Fargo Bank, NA is the actual holder of the promissory note or other obligation evidencing the above-referenced loan or has requisite authority under RCW 62A.3-301 to enforce said obligation." CP at 36.

NWTS, the successor trustee, sent Trujillo a notice of default dated May 30, 2012, itemizing the amounts in arrears on the delinquent loan. CP at 37-39. This notice also gave Trujillo certain information about both Fannie Mae and Wells Fargo. CP at 38. Specifically, it stated, "The owner of the note is Federal National Mortgage Association (Fannie Mae)," and it listed Fannie Mae's address. *Id.* This notice also stated, "The loan servicer for this loan is Wells Fargo Bank, N.A.," and it listed Wells Fargo's address. *Id.* Additionally, the notice of default identified NWTS as Wells Fargo's "duly authorized agent." CP at 39.[3]

NWTS recorded the notice of trustee's sale on July 10, 2012, and it scheduled a sale date of November 9, 2012, for Trujillo's property. CP at 41-44.[4]

---

[3] RCW 61.24.031 authorizes a trustee, a beneficiary, or an authorized agent to issue a notice of default.

[4] The record indicates that no sale occurred. CP at 45-53. The record is unclear about whether Wells Fargo actually possessed the note when NWTS issued the notice of

4

PROCEDURAL BACKGROUND

On February 27, 2013, Trujillo, acting pro se, sued NWTS and Wells Fargo. CP at 84-94. She claimed that NWTS and Wells Fargo violated the DTA. CP at 88-91.[5] Trujillo also claimed violations of the CPA and the Criminal Profiteering Act, as well as intentional infliction of emotional distress. CP at 91-94; ch. 9A.82 RCW. She sought an injunction to restrain the successor trustee's sale of her property, damages, and attorney fees. CP at 94.

NWTS filed a CR 12(b)(6) motion to dismiss. CP at 1-16. NWTS argued that RCW 61.24.030(7) authorized it to rely on Wells Fargo's beneficiary declaration signed in March 2012 as the basis for asserting that Wells Fargo was the

---

trustee sale. *See* CP at 87-88 ("On information and belief, as soon as Wells [Fargo] began the foreclosure process, Fannie Mae transferred possession of the Note to Wells [Fargo]"; "[s]hortly after obtaining [the note and the deed of trust], Wells [Fargo] commenced the foreclosure process."); Verbatim Report of Proceedings (May 31, 2013) (VRP) at 20 ("And it's true that Wells Fargo has a copy of the Note, but that is just a copy."); Suppl. Br. of Pet'r at 18-19 (arguing that allegations in her complaint did not constitute judicial admissions). Possession of a copy of the original note does not establish possession of the original note. *See Bavand v. OneWest Bank, FSB*, 176 Wn. App. 475, 498, 309 P.3d 636 (2013). Wells Fargo would constitute a "holder," and therefore a valid beneficiary under the DTA, if it actually held the note when it made the declaration at issue.

[5] Specifically, Trujillo alleged that Wells Fargo was not the beneficiary of the deed of trust and therefore could not initiate nonjudicial foreclosure. CP at 88-89. She also alleged that NWTS, as successor trustee, violated its duty of good faith under the DTA and initiated the foreclosure before it had authority to do so. CP at 89-90.

"beneficiary" in its notice of default. The trial court granted this motion and dismissed Trujillo's claims against NWTS with prejudice. CP at 80-81.[6]

Trujillo appealed. CP at 95-98. The Court of Appeals affirmed, holding that NWTS could lawfully rely on Wells Fargo's beneficiary declaration for authority to initiate a trustee's sale of Trujillo's property and that NWTS did not breach its DTA duty of good faith. *Trujillo v. Nw Tr. Servs., Inc.*, 181 Wn. App. 484, 487, 326 P.3d 768 (2014).

We granted Trujillo's petition for review but deferred consideration pending our decision in *Lyons*. *Trujillo v. Nw Tr. Servs., Inc.*, 182 Wn.2d 1020, 345 P.3d 784 (2014).

## ANALYSIS

Trujillo alleged three causes of action against NWTS: one under the CPA, one under the Criminal Profiteering Act, and one for intentional infliction of emotional distress. She bases all of these claims on NWTS's reliance on Wells Fargo's March 2012 beneficiary declaration as a basis for sending the notice of trustee's sale.

---

[6] In granting NWTS's motion, the trial court told Trujillo, "[I]t could very well be that Wells [Fargo] doesn't have the authority to foreclose because it doesn't own the Note, but that's a different issue then [sic] whether [NWTS] could be separately liable for issuing the Notice of Default or the Notice of Trustee Sale." VRP at 18. The court explained, "Today, the only issue before me is whether you can recover monetary damages from [NWTS] for anything they did. . . . You still have your claim pending against Wells Fargo." VRP at 21.

Trujillo alleges that this conduct violates RCW 61.24.030(7), which requires a trustee to have proof that the beneficiary is the owner of the promissory note before issuing a notice of trustee sale, and RCW 61.24.010(4), which imposes a duty of good faith on the trustee. CP at 89. Because Trujillo's CPA, profiteering, and intentional infliction of emotional distress claims hinged on her theory that NWTS could not lawfully rely on the beneficiary declaration, the trial court dismissed all of her claims after determining that the declaration sufficed under the DTA.

I.     Standard of Review

This court reviews CR 12(b)(6) dismissals de novo.[7] *Kinney v. Cook*, 159 Wn.2d 837, 842, 154 P.3d 206 (2007). Dismissal is proper if the court concludes that the plaintiff can prove no set of facts that would justify recovery. *Id.* We presume that the plaintiff's factual allegations are true and draw all reasonable inferences from the factual allegations in the plaintiff's favor. *Gorman v. City of Woodinville*, 175 Wn.2d 68, 71, 283 P.3d 1082 (2012) (citing *Reid v. Pierce County*, 136 Wn.2d 195, 201, 961 P.2d 333 (1998)). We may even consider hypothetical

---

[7] In the Court of Appeals, the parties disputed whether the court should review the trial court's order as a CR 12(b)(6) dismissal or a CR 56(c) summary judgment order. *Trujillo*, 181 Wn. App. at 490. Noting that the trial court's order granted NWTS's motion to dismiss under CR 12(b)(6), the Court of Appeals concluded, "Because the supporting documents the trial court considered were alleged in the complaint and the 'basic operative facts are undisputed and the core issue is one of law,' we review the order under CR 12(b)(6), not as a summary judgment under CR 56(c)." *Id.* at 492.

facts to determine if dismissal is proper. *Lakey v. Puget Sound Energy, Inc.*, 176 Wn.2d 909, 922 n.9, 296 P.3d 860 (2013). "But, '[i]f a plaintiff's claim remains legally insufficient even under his or her proffered hypothetical facts, dismissal pursuant to CR 12(b)(6) is appropriate.'" *FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.*, 180 Wn.2d 954, 963, 331 P.3d 29 (alteration in original) (quoting *Gorman v. Garlock, Inc.*, 155 Wn.2d 198, 215, 118 P.3d 311 (2005)).

II.    Trujillo Alleges Facts Sufficient To Prove NWTS Violated the DTA

    *A. DTA Statutory Framework*

The first statute at issue here is RCW 61.24.030. It provides a mandatory prerequisite to notice of a trustee's sale:

It shall be requisite to a trustee's sale:

. . . .

(7)(a) That, for residential real property, before the notice of trustee's sale is recorded, transmitted, or served, the trustee shall have proof that the beneficiary is the *owner* of any promissory note or other obligation secured by the deed of trust. A declaration by the beneficiary made under the penalty of perjury stating that the beneficiary is the *actual holder* of the promissory note or other obligation secured by the deed of trust shall be sufficient proof as required under this subsection.

(b) Unless the trustee has violated his or her duty under RCW 61.24.010(4), the trustee is entitled to rely on the

8

beneficiary's declaration as evidence of proof required under this subsection.

RCW 61.24.030(7) (emphasis added).

The DTA defines the key term "beneficiary" elsewhere. RCW 61.24.005(2) provides that a "beneficiary" is "the holder of the instrument or document evidencing the obligations secured by the deed of trust, excluding persons holding the same as security for a different obligation." The DTA does not define the term "holder."

RCW 61.24.010(4) then requires a foreclosure trustee to act in good faith toward the borrower, beneficiary, and grantor. This duty "requires the trustee to remain impartial and protect the interests of all the parties." *Lyons*, 181 Wn.2d at 787. We described this duty in *Lyons*:

> A foreclosure trustee must "adequately inform" itself regarding the purported beneficiary's right to foreclose, including, at a minimum, a "cursory investigation" to adhere to its duty of good faith. . . . [A] trustee must treat both sides equally and investigate possible issues using its independent judgment to adhere to its duty of good faith.

*Id.* (internal quotation marks omitted) (quoting *Walker v. Quality Loan Serv. Corp. of Wash.*, 176 Wn. App. 294, 309-10, 308 P.3d 716 (2013)).

### B. DTA Analysis

The first question that we must address is whether NWTS violated the DTA by relying on a beneficiary declaration stating that Wells Fargo "is the actual holder of the promissory note or other obligation evidencing the above-referenced loan or

9

has requisite authority under RCW 62A.3-301 to enforce said obligation." CP at 36. Trujillo claims that NWTS's decision to rely on this declaration was unlawful. Suppl. Br. of Pet'r at 17-18; CP at 89-90. She argues that the trustee must have proof that the beneficiary is the "owner" of the note before sending a notice of trustee sale, and that NWTS knew Wells Fargo did not own the note before sending that notice. Pet. for Review at 9; CP at 90. She also asserts that the beneficiary declaration here "did not authorize NWTS to record the notice of trustee's sale because it contained the unauthorized additional ["or"] language," which is "different from the language of the second sentence of RCW 61.24.030(7)(a)" and which this court declared improper in *Lyons.* Suppl. Br. of Pet'r at 17; CP at 88.

We agree with Trujillo for the most part. The DTA requires a trustee to have proof that the beneficiary actually *owns* the note on which the trustee is foreclosing. *Lyons,* 181 Wn.2d at 789 (citing *Bain v. Metro. Mortg. Grp. Inc.,* 175 Wn.2d 83, 102, 111, 285 P.3d 34 (2012)). But the DTA also says, "'A declaration by the beneficiary made under the penalty of perjury stating that the beneficiary is the actual *holder* of the promissory note . . . shall be sufficient proof'" of this requirement. *Id.* at 789-90 (emphasis added) (alteration in original) (quoting RCW 61.24.030(7)(a)). Thus, a trustee is entitled to rely on such a beneficiary declaration when initiating a trustee's sale, unless the trustee violated its good faith duty. *Id.* at 790 (citing RCW

61.24.030(7)(b)). In this case, however, we don't have such a declaration. We have a declaration stating that Wells Fargo could be the "actual holder" "or" it could be something else. The question is whether reliance on that ambiguous declaration suffices.[8]

Our decision in *Lyons*—which did not issue until after the Court of Appeals resolved Trujillo's case—answers that question. In *Lyons*, a case decided on summary judgment, we considered the validity of a beneficiary declaration containing the same "or" language.[9] We ruled that it did not satisfy RCW 61.24.030(7)(a). *Lyons*, 181 Wn.2d at 791. We explained, "On its face, it is ambiguous whether the declaration proves Wells Fargo is the holder or whether Wells Fargo is a nonholder in possession or person not in possession who is entitled to enforce the provision under RCW 62A.3-301." *Id.*

*Lyons* controls the outcome in this case. Here, as in *Lyons*, the language in Wells Fargo's declaration is ambiguous about whether Wells Fargo actually held the

---

[8] Thus, we do not address whether RCW 61.24.030(7)(a) allows a trustee to rely on an *un*ambiguous declaration stating that the beneficiary is the actual holder of the note, even though the owner is a different party. That issue is raised in a pending case, and we express no opinion on it here.

[9] The beneficiary declaration at issue in *Lyons* similarly stated, "'Wells Fargo Bank, NA, is the actual holder of the promissory note or other obligation evidencing the above-referenced loan *or* has requisite authority under RCW 62A.3-301 to enforce said obligation.'" *Lyons*, 181 Wn.2d at 780 (emphasis added).

note when it initiated the foreclosure. CP at 36. This ambiguity indicated that the declaration might be ineffective. *Lyons*, 181 Wn.2d at 790. Because this declaration fails to satisfy RCW 61.24.030(7)(a), NWTS could not lawfully rely on it to prove that Wells Fargo was an "owner" of the note. Under *Lyons*, because Trujillo alleges that NWTS deferred to this ambiguous declaration to initiate foreclosure on her home, she alleges facts sufficient to prove a violation of the DTA. *Id.* at 790; *see also Beaton v. JPMorgan Chase Bank NA*, No. C11-0872 RAJ, 2013 WL 1282225, at *5 (W.D. Wash. Mar. 26, 2013) (court order).

We therefore reverse the Court of Appeals decision that Trujillo failed to allege a violation of the DTA. On remand, Trujillo must have the opportunity to prove that NWTS actually relied on the impermissibly ambiguous declaration as a basis for issuing the notice of trustee's sale. [10]

---

[10] A trustee must have the requisite proof of the beneficiary's ownership of the note *before* recording, transmitting, or serving the notice of trustee's sale. *See* Br. of Amicus Curiae of Att'y Gen. of State of Wash. at 10; RCW 61.24.030(7)(a) ("[*B*]*efore* the notice of trustee's sale is recorded, transmitted, or served, the trustee shall have proof that the beneficiary is the owner of any promissory note or other obligation secured by the deed of trust." (emphasis added)). A court must assess the propriety of the trustee's conduct based upon the trustee's evidence and investigation at that time.

12

III. The Alleged Violation of the DTA Is Sufficient To Support Trujillo's CPA Claim

*A. CPA Statutory Framework*

Trujillo cannot bring a claim for damages under the DTA absent a completed trustee's sale of her property. *Frias v. Asset Foreclosure Servs., Inc.*, 181 Wn.2d 412, 428-30, 334 P.3d 529 (2014); *Lyons*, 181 Wn.2d at 784. She may, however, bring a CPA claim based on a defendant's wrongful conduct during a nonjudicial foreclosure process, even without a completed sale. *See Frias*, 181 Wn.2d at 429-30; *Bain*, 175 Wn.2d at 119.

The CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. To succeed on a CPA claim, a plaintiff must establish (1) an unfair or deceptive act (2) in trade or commerce (3) that affects the public interest, (4) injury to the plaintiff in his or her business or property, and (5) a causal link between the unfair or deceptive act complained of and the injury suffered. *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 782, 295 P.3d 1179 (2013) (quoting *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986)).

*B. Analysis*

Trujillo alleges that NWTS violated the CPA. Turning to the first element of a CPA claim, she alleges that NWTS's attempted foreclosure was unfair or

13

deceptive. CP at 93.[11] Whether an act is unfair or deceptive is a question of law. *Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wn.2d 133, 150, 930 P.2d 288 (1997). "A plaintiff need not show the act in question was intended to deceive, only that it had the capacity to deceive a substantial portion of the public." *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 47, 204 P.3d 885 (2009) (citing *Leingang*, 131 Wn.2d at 150).

Following *Lyons*, NWTS's alleged conduct had the capacity to deceive. It therefore supports a CPA claim. *See Lyons*, 181 Wn.2d at 785.

To satisfy the second and third elements of her CPA claim—that NWTS's acts occurred in trade or commerce and that they affected the public interest—Trujillo alleges, "Wells [Fargo] makes these unfounded claims to foreclose on defaulting borrowers as a routine part of its foreclosure activities on behalf of Fannie Mae. Its foreclosure activities are conducted in the course of trade and commerce and certainly impact the public interest." CP at 93. In a private action, a plaintiff can establish that the lawsuit would serve the public interest by showing a likelihood that other plaintiffs have been or will be injured in the same fashion. *Michael v. Mosquera-Lacy*, 165 Wn.2d 595, 604-05, 200 P.3d 695 (2009) (quoting *Hangman*

---

[11] None of the acts alleged in Trujillo's complaint constitute per se violations of the DTA that would automatically satisfy the first element of a CPA claim. RCW 61.24.135.

14

*Ridge*, 105 Wn.2d at 790). The court considers four factors to assess the public interest element when a complaint involves a private dispute: (1) whether the defendant committed the alleged acts in the course of his/her business, (2) whether the defendant advertised to the public in general, (3) whether the defendant actively solicited this particular plaintiff, and (4) whether the plaintiff and defendant have unequal bargaining positions. *Id.* (citing *Hangman Ridge*, 105 Wn.2d at 791). The plaintiff need not establish all of these factors, and none is dispositive. *Id.* Trujillo's allegations satisfy the second and third elements because they relate to the sale of property, RCW 19.86.010(2), and they state that other plaintiffs have or will likely suffer injury in the same fashion. *Id.* (citing *Hangman Ridge*, 105 Wn.2d at 790).[12]

To meet the final two elements of her CPA claim—injury and causation—Trujillo alleges, "[NWTS] is attempting to help Wells [Fargo] sell the Property on

---

[12] As Trujillo points out in support of her argument on this element, numerous lawsuits have involved similar beneficiary declarations. *See, e.g., Beaton,* 2013 WL 1282225, at *5 (beneficiary declaration stated that JPMorgan Chase Bank NA "'is the actual holder . . . or has requisite authority under RCW 62A.3-301'" was insufficient (emphasis omitted)); *In re Butler,* 512 B.R. 643, 644, 655-56 (Bankr. W.D. Wash. 2014) (beneficiary declaration stating that OneWest Bank "'is the actual holder of the promissory note . . . or has requisite authority under RCW 62A.3-301 to enforce said obligation'" was sufficient (quoting RCW 61.24.030(7)(a))); *Mulcahy v. Fed. Home Loan Mortg. Corp.,* No. C13-1227RSL, 2014 WL 1320144, at *4 (W.D. Wash. Mar. 28, 2014) (declaration stating that Wells Fargo "'is the actual holder . . . or has requisite authority under RCW 62A.3-301'" was sufficient); *Mickelson v. Chase Home Fin. LLC,* 579 F. App'x 598, 601 (9th Cir. 2014) (Mem. Op.) (beneficiary declaration stated that Chase Home Finance LLC is the actual holder or has requisite authority under RCW 62A.3-301 was sufficient).

the basis that Wells [Fargo] is the Note Holder and beneficiary" when "[i]t has been shown, beyond reasonable dispute, that it was neither." CP at 93. In contrast, NWTS moved to dismiss, arguing, "The Plaintiff does not contend that any action by NWTS causes [sic] or induced her to default on the loan. Nor does Plaintiff assert that no party is entitled to foreclose on the property." CP at 14-15. NWTS concludes, "[R]egardless of NWTS' role as successor trustee under the deed of trust, Plaintiff's property would still be foreclosed upon based on the failure to make payments on the loan." CP at 15.

While emotional distress, embarrassment, and inconvenience are not compensable injuries under the CPA, Trujillo does not have to lose her property completely to prove injury. *Frias*, 181 Wn.2d at 430-31. Trujillo can satisfy the CPA's injury requirement with proof that her property interest or money is diminished as a result of NWTS's unlawful conduct, even if the expenses incurred by the statutory violation are minimal. *Panag*, 166 Wn.2d at 57 (quoting *Mason v. Mortg. Am., Inc.*, 114 Wn.2d 842, 854, 792 P.2d 142 (1990)). Trujillo's investigation expenses and other costs associated with dispelling the uncertainty about who owns the note that NWTS's allegedly deceptive conduct created are therefore sufficient to constitute an injury under the CPA. Br. of Amicus Curiae of

Att'y Gen. of State of Wash. at 14-15; *McDonald v. OneWest Bank, FSB*, 929 F. Supp. 2d 1079, 1098 (W.D. Wash. 2013) (citing *Panag*, 166 Wn.2d at 62-63).

IV. The Alleged DTA Violation Does Not Support a Criminal Profiteering Claim

*A. Criminal Profiteering Statutory Framework*

Trujillo also alleges that NWTS violated the Criminal Profiteering Act. CP at 91-92. "Criminal profiteering" is defined as commission of specific enumerated felonies for financial gain. RCW 9A.82.010(4). Trujillo alleges violations of RCW 9A.82.010(4)(e), which defines "theft" as a predicate criminal profiteering act, and RCW 9A.82.010(4)(s), which defines "leading organized crime" as a criminal profiteering act. CP at 91-92.

But the definition "profiteering," alone, is not actionable. Only a violation of RCW 9A.82.100(1)(a) can support a private profiteering action. Assuming that Trujillo actually intended to proceed under that statute, it provides that a person who sustains injury to his or her person, business, or property may sue to recover damages and costs, including reasonable investigative and attorney fees, if the injury is caused by an act of criminal profiteering that is part of a pattern of criminal profiteering activity or by a violation of RCW 9A.82.060, which involves leading organized crime. *Winchester v. Stein*, 135 Wn.2d 835, 850, 959 P.2d 1077 (1998) (citing RCW 9A.82.100(1)(a)). Trujillo never explains whether she is asserting a claim under the

pattern-of-profiteering-acts prong of RCW 9A.82.100(1) or the leading-organized-crime portion of that statute.

*B. Analysis*

Assuming that Trujillo meant to allege a profiteering claim based on leading organized crime, Trujillo would have to establish that NWTS (1) intentionally organized, managed, directed, supervised, or financed (2) three or more persons (3) with the intent to engage in a pattern of criminal profiteering activity. RCW 9A.82.060(1)(a). Trujillo fails to allege such a claim because she does not allege the involvement of three or more persons. *Id.*

Assuming instead that Trujillo intended to allege a profiteering claim based on a "pattern" of profiteering acts, she would have to establish that NWTS committed an enumerated felony that was part of a pattern of profiteering activity. The statute has a very detailed definition of "pattern of criminal profiteering activity." It means, in very general terms, three or more acts of criminal profiteering within a five-year period that have specific similarities or are "interrelated" with a "nexus to the same enterprise." RCW 9A.82.010(12). "Enterprise" means "any individual, sole proprietorship, partnership, corporation, business trust, or other profit or nonprofit legal entity, and includes any union, association, or group of

individuals associated in fact although not a legal entity, and both illicit and licit enterprises and governmental and nongovernmental entities." RCW 9A.82.010(8).

Even if we construe facts alleged throughout the pro se complaint liberally, they are still wanting. In her complaint, Trujillo alleges,

> Well[s Fargo's] attempt to obtain the Property at the trustee's sale by bidding the amount of Plaintiff's debt obligation when Wells [Fargo] knows it is neither the owner nor the holder of the Note is nothing short of attempted theft. Claiming that it is the Beneficiary and Note holder as the essence of its attempt to obtain the Property means that the attempted theft is an attempt to steal by employing deceptive means.

CP at 91. She also alleges, "[NWTS] has acted in concert with Wells [Fargo] in Wells [Fargo's] attempt to bring about the sale of the Property." CP at 92. She further alleges, "Allowing the servicer to foreclose in its own name, where applicable law permits, is such a normal part of Freddie Mac's [(Federal Home Loan Mortgage Corporation)] foreclosure activity that Freddie Mac has developed standard procedures for using this method to foreclose." *Id.* And she alleges that Wells Fargo engaged in "leading organized crime" under RCW 9A.82.060 because "Wells [Fargo] has foreclosed on hundreds, if not thousands, of homes in the last five years. Scores of those homes, at least, have been Fannie Mae homes." *Id.*

No Washington case has provided a test to determine whether an "enterprise" exists. But the Supreme Court has indicated what is required to show an enterprise under the federal RICO statute (Racketeer Influenced and Corrupt Organizations

19

Act), 18 U.S.C. § 1964(c).[13] An enterprise is an entity or a group of people "associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583, 101 S. Ct. 2524, 69 L. Ed. 2d 246 (1981). A plaintiff can prove the existence of an enterprise with "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Id.*

Trujillo fails even to identify an enterprise in her complaint.[14] Although she mentions NWTS, Wells Fargo, Freddie Mac, and Fannie Mae, CP at 92, she is not clear about which of these entities, or which combination of them, constitute the "enterprise." Given that defect alone, she fails to allege a profiteering claim.

V.  Trujillo Alleges Insufficient Facts To Prove Intentional Infliction of Emotional Distress

Finally, Trujillo claims intentional infliction of emotional distress. CP at 93-94. This requires proof of the following elements: "'(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual

---

[13] We may apply federal case law in this area to interpret the Criminal Profiteering Act. *Winchester*, 135 Wn.2d at 848.

[14] Several United States Courts of Appeals have interpreted *Turkette* and expanded on what must be shown to prove an enterprise. *E.g.*, *United States v. Pelullo*, 964 F.2d 193, 211 (3d Cir. 1992). We need not address the exact contours of that "enterprise" element here, however, because Trujillo has not even alleged an enterprise at all.

result to plaintiff of severe emotional distress.'" *Lyons*, 181 Wn.2d at 792 (quoting *Kloepfel v. Bokor*, 149 Wn.2d 192, 195, 66 P.3d 630 (2003)). Although a jury ultimately determines if conduct is sufficiently outrageous, the court makes the initial determination of whether reasonable minds could differ about "'whether the conduct was sufficiently extreme to result in liability.'" *Id.* (quoting *Dicomes v. State*, 113 Wn.2d 612, 630, 782 P.2d 1002 (1989)). To establish extreme and outrageous conduct, a plaintiff must show that the conduct was "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (internal quotation marks omitted) (quoting *Robel v. Roundup Corp.*, 148 Wn.2d 35, 51, 59 P.3d 611 (2002)).

Once again, *Lyons* controls. It held that allegations identical to those in Trujillo's complaint fail to describe conduct sufficiently outrageous to support an intentional infliction of emotional distress claim. *Id.* at 793.

## CONCLUSION

NWTS's decision to rely on Wells Fargo's ambiguous declaration violated the DTA. This violation, combined with Trujillo's additional allegations, supports a CPA claim. It does not, however, support a profiteering claim or a claim of

intentional infliction of emotional distress. We therefore reverse the Court of Appeals in part and remand for further proceedings on the CPA claim.

_Gordon McCloud, J._

WE CONCUR:

_Madsen, C.J._

_Johnson, J._

_Owens, J._

_Fairhurst, J._

_Stephens, J._

_Wiggins, J._

_González, J._

_Yu, J._