

FILED
COURT OF APPEALS
STATE OF WASHINGTON

2015 NOV 16 AM 8: 2J

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| JAMES KEITH RICHARDS and KIRSTEN RICHARDS, | ) ) ) | No. 71945-9-I |
| Appellants, | ) ) ) | |
| v. | ) ) ) | |
| QUALITY LOAN SERVICE CORPORATION OF WASHINGTON, INC.; LEHMAN BROTHERS BANK, FSB; AURORA LOAN SERVICES, LLC; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. and DOE DEFENDANTS 1 THROUGH 20, | ) ) ) ) ) ) ) ) ) | UNPUBLISHED OPINION<br><br>FILED: November 16, 2015 |
| Respondents. | ) ) ) | |

VERELLEN, A.C.J. — After Aurora Loan Services, LLC (Aurora) initiated a nonjudicial deed of trust foreclosure on his property, James Richards filed a lawsuit for injunctive relief and damages. He appeals the judgment entered after a nonjury trial in favor of the defendants Lehman Brothers Bank, FSB (Lehman), Aurora, and Mortgage Electronic Registration Systems, Inc. (MERS). He contends that Aurora lacked authority to commence the foreclosure and that Aurora and MERS made affirmative false representations and intentional and negligent misrepresentations. Because the record supports the trial court's findings of fact and the findings support its proper conclusions of law, we affirm.

FACTS

Richards borrowed $1,000,000 from Lehman in June 2007. He executed a promissory note secured by a deed of trust. The deed of trust names Lehman as the lender, MERS as beneficiary "solely in a nominee capacity for the Lender and Lender's successors and assigns, and Fidelity National Title Insurance Co. as trustee."[1]

Thereafter, the Structured Asset Securities Corporation Lehman XS Trust Mortgage Pass-Through Certificates, Series 2007-16N (Securitized Trust) purchased the loan. On August 1, 2007, Aurora and U.S. Bank entered agreements to service the loan and act as custodian on behalf of Securitized Trust.

In October 2009, Richards failed to timely pay property taxes on the property. Aurora paid the taxes and sought reimbursement from Richards in the form of increased monthly payments on the loan. Ultimately, Richards failed to keep current with monthly payments as required by Aurora.

On November 29, 2010, Aurora obtained physical possession of the note, indorsed in blank, from La Salle Bank, the document custodian. Aurora retained possession of the note through June 25, 2012.[2] In January 2011, MERS executed and recorded an assignment conveying its "beneficial interest" under the deed of trust to Aurora.[3] In February 2011, Aurora appointed Quality Loan Services, Inc. (QLS), as successor trustee and provided QLS with a beneficiary declaration identifying Aurora as the "actual holder" of the note.[4] QLS issued a notice of default to Richards and

---

[1] Clerk's Papers (CP) at 98.

[2] See CP at 100 (Finding of Fact 15).

[3] Ex. 5.

[4] CP at 101.

2

identified Aurora as the "current owner/beneficiary" of the note secured by the deed of trust.[5] QLS then issued a notice of trustee's sale set for June 17, 2011.

In June 2011, Richards filed suit against QLS, Lehman, Aurora, and MERS, seeking damages for violations of the Consumer Protection Act (CPA)[6] and the Deeds of Trust Act (DTA),[7] breach of contract, and intentional and/or negligent misrepresentation.[8] Prior to trial, Richards voluntarily dismissed his claims against QLS and abandoned his breach of contract claim. After a two-day bench trial in February 2014, the trial court found that Richards failed to prove his CPA and tort claims and entered written findings of fact and conclusions of law.

Richards appeals.

## ANALYSIS

"When a trial court has weighed the evidence at a bench trial, appellate review is limited to determining whether substantial evidence supports its findings of fact and, if so, whether the findings support the trial court's conclusions of law."[9] Substantial evidence is that sufficient to persuade a fair-minded person of the finding's truth.[10]

---

[5] Ex. 4.

[6] Ch. 19.86 RCW.

[7] Ch. 61.24 RCW.

[8] Richards also obtained an order restraining the trustee's sale of the property. Richards sold the property and paid the note in full in December 2013.

[9] Hegwine v. Longview Fibre Co., Inc., 132 Wn. App. 546, 555, 132 P.3d 789 (2006).

[10] Sunnyside Valley Irrigation Dist. v. Dickie, 149 Wn.2d 873, 879, 73 P.3d 369 (2003).

Unchallenged findings are verities on appeal.[11] We review conclusions of law de novo.[12]

To establish a violation of the CPA, a plaintiff must prove "(1) an unfair or deceptive act, (2) in trade or commerce, (3) that affects the public interest, (4) injury to the plaintiff in his or her business or property, and (5) a causal link between the unfair or deceptive act complained of and the injury suffered."[13] If any element is not satisfied, a CPA claim cannot succeed.[14] Violations of the DTA during nonjudicial foreclosure proceedings may be actionable under the CPA, even where there is no completed foreclosure.[15]

To establish a claim of fraud or intentional misrepresentation, a plaintiff must prove by clear, cogent, and convincing evidence:

> (1) a representation of existing fact, (2) its materiality, (3) its falsity, (4) the speaker's knowledge of its falsity, (5) the speaker's intent that it be acted upon by the person to whom it is made, (6) ignorance of its falsity on the part of the person to whom the representation is addressed, (7) the latter's reliance on the truth of the representation, (8) the right to rely upon it, and (9) consequent damage.[16]

---

[11] Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 808, 828 P.2d 549 (1992).

[12] Sunnyside Valley Irrigation Dist. v. Dickie, 149 Wn.2d 873, 880 73 P.3d 369 (2003).

[13] Trujillo v. Nw. Trustee Servs., Inc., 183 Wn.2d 820, 355 P.3d 1100, 1107 (2015).

[14] Robinson v. Avis Rent A Car System, Inc., 106 Wn. App. 104, 114, 22 P.3d 818 (2001).

[15] Frias v. Asset Foreclosure Servs., Inc., 181 Wn.2d 412, 430, 334 P.3d 529 (2014).

[16] Elcon Constr., Inc. v. E. Wash. Univ., 174 Wn.2d 157, 166, 273 P.3d 965 (2012).

A claim of negligent misrepresentation requires clear, cogent, and convincing evidence that

> (1) the defendant supplied information for the guidance of others in their business transactions that was false, (2) the defendant knew or should have known that the information was supplied to guide the plaintiff in his business transactions, (3) the defendant was negligent in obtaining or communicating the false information, (4) the plaintiff relied on the false information, (5) the plaintiff's reliance was reasonable, and (6) the false information proximately caused the plaintiff damages.[17]

Thus, to prevail under either theory, a plaintiff must establish by clear, cogent, and convincing evidence that the defendant told the plaintiff something false.

Richards does not assign error to any of the trial court's 32 numbered findings of fact. They are verities on appeal. Instead, Richards contends that the trial court erred by concluding that he failed to establish a CPA violation based on Aurora's initiation of foreclosure proceedings without authority, that is, in violation of the provisions of the DTA. Although he makes several arguments, the core premise of his appeal is that Aurora lacked authority to initiate foreclosure because it was "merely" a loan servicer or custodian rather than the owner of the note.[18] But the DTA does not require a proper beneficiary to prove ownership before initiating foreclosure. As our Supreme Court recently recognized in Brown v. Washington State Department of Commerce, Washington law authorizes the "division of note ownership from note enforcement."[19]

RCW 61.24.005(2) of the DTA broadly defines "beneficiary" as "the holder of the instrument or document evidencing the obligations secured by the deed of trust."[20] The

---

[17] Ross v. Kirner, 162 Wn.2d 493, 499, 172 P.3d 701 (2007).

[18] Appellant's Br. at 3.

[19] No. 90652-1, 2015 WL 6388153, at *7 (Wash. Oct. 22, 2015).

[20] RCW 61.24.005(2).

5

Uniform Commercial Code (UCC) guides our interpretation of the DTA's terms.[21] The UCC defines "holder" as the person in possession of the note that is payable either to bearer or to an identified person who is the person in possession.[22] The definition of "holder" "does not turn on ownership."[23] A holder of a note is entitled to enforce the note, "regardless of ownership."[24] Thus, a loan servicer who holds the note is the beneficiary entitled to enforce the note even if a separate "note owner" is "entitled to the ultimate economic benefit of payments on the note."[25] Moreover, as the holder, the servicer had authority to appoint the successor trustee to commence the foreclosure.

Here, the trial court found that Aurora had physical possession of the note, indorsed in blank, from November 29, 2010, until June 25, 2012. Based on these facts, the trial court properly concluded that Aurora was the "beneficiary" entitled to initiate foreclosure under the DTA.[26] And even if Richards had assigned error to the relevant findings, substantial evidence in the record supports the findings. Aurora produced a log indicating that the note remained in its vault in Scottsbluff, Nebraska between November 2010 and June 2012. We defer to the trial court's assessment of the persuasiveness of the evidence.[27]

---

[21] Title 62A; Bain v. Metropolitan Mortg. Grp., Inc., 175 Wn.2d 83, 104, 285 P.3d 34 (2012).

[22] RCW 62A.3-201. If indorsed in blank, the note is payable to bearer. RCW 62A.3-205(b).

[23] Brown, 2015 WL 6388153, at *7.

[24] Trujillo v. Nw. Trustee Servs., Inc., 181 Wn. App. 484, 501, 326 P.3d 768 (2014), rev'd on other grounds, ___ Wn.2d ___, 355 P.3d 1100 (2015).

[25] Brown, 2015 WL 6388153, at *6 (quotation marks omitted).

[26] Id. at *9-*10, *12 (loan servicer holding note indorsed in blank is beneficiary entitled to enforce the note).

[27] Lodis v. Corbis Holdings, Inc., 172 Wn. App. 835, 861, 292 P.3d 779 (2013).

To support his claim that Aurora was merely a custodian rather than a beneficiary, Richards relies on the loan servicing agreement he introduced at trial. But the trial court did not find that the agreement precluded Aurora from enforcing the note in its possession in accordance with the DTA. We deem the absence of such a finding as a finding against Richards, who had the burden to prove his claim.[28] Because Richards failed to prove his theory that Aurora violated the DTA by initiating a foreclosure without authority, the trial court properly entered judgment in favor of Aurora on his CPA claim.

Similarly, Richards failed to prove his CPA claim against MERS. His theory at trial was that MERS executed and recorded an assignment of its interest in the deed of trust containing "false information" "in order to give the false impression that Aurora had the legal authority to foreclose."[29] But the trial court did not find that the assignment contained any false statement. Again, we deem the lack of such a finding as a finding against Richards. Moreover, Richards did not produce any evidence that he suffered any injury as a result of any action by MERS.[30] The trial court properly entered judgment in favor of MERS on his CPA claim.

As to his claims of intentional or negligent misrepresentation, Richards contends that Aurora and MERS made false statements in foreclosure documents to support "their false assertion that Aurora had the authority to foreclose."[31] But as discussed

---

[28] Pacesetter Real Estate, Inc. v. Fasules, 53 Wn. App. 463, 475, 767 P.2d 961 (1989).

[29] Appellant's Br. at 12.

[30] See Bain, 175 Wn.2d at 120 ("the mere fact [that] MERS is listed on the deed of trust as a beneficiary is not itself an actionable injury").

[31] Appellant's Br. at 49.

above, the trial court properly determined that Aurora had the authority as the beneficiary under the DTA to foreclose. Richards failed to prove that either Aurora or MERS made any false statement. The trial court properly entered judgment on these claims in favor of Aurora and MERS.

Affirmed.

WE CONCUR: