# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| BRAD L. BILLINGS and JOHNITA D. BILLINGS, husband and wife, | No. 55020-2-II |
| Appellants, | |
| v. | |
| WILMINGTON SAVINGS FUND SOCIETY FSB D/B/A CHRISTIANA TRUST, NOT INDIVIDUALLY BUT AS TRUSTEE FOR CARLSBAD FUNDING MORTGAGE TRUST, a foreign banking entity; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a foreign corporation; CLEAR RECON CORP, a Washington corporation; and DOES 1-10, | UNPUBLISHED OPINION |
| Respondents. | |

MAXA, J. – Brad and Johnita Billings appeal the trial court's order granting summary judgment in favor of Wilmington Savings Fund Society FSB d/b/a Christiana Trust, as Trustee for Carlsbad Funding Mortgage Trust (Wilmington Savings Fund), Mortgage Electronic Registration Systems, Inc. (MERS), and Clear Recon Corp. (collectively, Respondents). We hold that (1) there were no genuine issues of material fact that precluded summary judgment, and (2) the trial court did not err by denying the Billings' request for leave to amend their complaint. Accordingly, we affirm the trial court's order granting summary judgment.

FACTS

*Background*

In August 2006, the Billings executed a promissory note for $167,959, which identified America's Wholesale Lender as the lender. The note was secured by a deed of trust, which identified the lender as America's Wholesale Lender, a corporation organized and existing under the laws of New York. The deed of trust also designated MERS, acting as a nominee for America's Wholesale Lender, as the beneficiary of the deed of trust.

At some unknown time, the promissory note was indorsed in blank by Countrywide Home Loans Inc., a New York corporation doing business as America's Wholesale Lender.

The Billings defaulted on the promissory note in February 2011. Clear Recon, identified as the trustee of the deed of trust, sent the Billings a notice of default. Wilmington Savings Fund was identified as the owner of the promissory note. The Billings failed to respond and Clear Recon recorded a notice of trustee's sale in March 2017.

*Billings Complaint*

In July 2017, the Billings filed a complaint against the Respondents. The Billings sought an injunction to restrain the trustee's sale. They also alleged that all the Respondents had violated the Consumer Protection Act (CPA), chapter 19.86 RCW, by committing unfair and deceptive acts. The Billings specifically referenced MERS's representation that it was the beneficiary of the deed of trust and Wilmington Savings Fund's representation that it had acquired an enforceable interest in the note and deed of trust. The complaint also alleged fraud based on misrepresentations made by the Respondents.

Johnita[1] filed a declaration in support of the injunction. She declared that, since executing the promissory note, she had learned that America's Warehouse Lender was not a New York corporation or a licensed mortgage lender. In addition, she had never received any document demonstrating the transfer of the interest in the promissory note or deed of trust from the original lender. Johnita further stated,

> Although the mortgage loan documents claimed that the mortgage loan could be sold, my presumption and understanding, as a non-banker and non-lender, was that any such sale would be to another Federally-regulated residential mortgage lender in order that the loan retain its character as a Federally-regulated residential mortgage loan and that benefits of such a loan, such as the ability to refinance, modify or restructure the loan, and the ability to deal directly with the lender, would be preserved and maintained. I was never advised that the loan could be sold to a non-regulated Trust.

Clerk's Papers (CP) at 67-68.[2]

The trial court granted a temporary restraining order and required the Billings to post a bond. This court upheld the amount of the bond. The Billings never posted the required bond and the trial court dissolved the temporary restraining order. After the temporary restraining order was dissolved, the property was sold at a trustee's sale.

C.    SUMMARY JUDGMENT MOTIONS

On April 10, 2020, the Respondents filed a renewed motion for summary judgment.[3] They argued that there was no genuine issue of material fact that the promissory note was indorsed in blank and that Wilmington Savings Fund was the holder of the note with the right to

---

[1] We use first names to distinguish between Johnita and Brad Billings. No disrespect is intended.

[2] Brad submitted essentially the same declaration.

[3] The trial court previously had granted summary judgment in favor of the Respondents in January 2019. That order apparently was vacated because the Billings prior counsel's license to practice law was suspended at the time of the hearing.

enforce it. The Respondents provided a declaration stating that Wilmington Savings Fund was the holder of the note. They also argued that all of the Billings' claims should be dismissed as a matter of law.

Regarding America's Wholesale Lender, the Respondents argued there was no genuine issue of material fact regarding the execution or creation of the note because it had been well-established that America's Wholesale Lender was a tradename of Countrywide Home Loans. In its reply, America's Wholesale Lender provided Countrywide's registration with the Washington Secretary of State showing America's Wholesale Lender as registered tradename of Countrywide Home Loans since 1993.

The Respondents' summary judgment motion was set for a hearing on May 8, 2020. The Billings filed a response to the motion on May 5, just three days before the hearing date. The Billings response did not include any declarations or exhibits. However, the Billings did incorporate by reference Johnita's previously filed affidavit in support of the injunction.

The Billings argued that there were genuine issues of material fact as to the enforceability of the promissory note and regarding all of their claims.

Twice in their response the Billings mentioned amending their complaint. First, the Billings noted that the completed sale of the property gave rise to additional CPA and fraud claims based on the sale. They requested leave to amend the complaint to add these claims. Second, the Billings noted that they had alleged that the language in the note stating that the loan could be sold was misleading and incomplete. They requested an opportunity to amend if the trial court deemed it necessary to amend their complaint to add a negligent misrepresentation claim.

*Summary Judgment Hearing and Ruling*

At the hearing on the summary judgment motion, the trial court noted that the Billings' response was untimely under the court rules. The court stated that it had the authority to strike the entire response, but the court agreed that it would consider the response and rule on the merits of the motion.

Before ruling on the motion, the trial court clarified what it relied on when making its decision. The court reviewed the procedural history of the case, including the earlier motion for summary judgment that was granted and then vacated. The court also reviewed the Respondents' summary judgment motion and the attached declarations and exhibits. The court noted that the untimely response to the motion for summary judgment was not supported by any declarations or affidavits. The court stated that it was not sufficient for the Billings to argue that a review of the entire file would reveal questions of fact.

The trial court also recognized that the Billings' untimely response to the summary judgment motion included a request for leave to amend the complaint. However, the court ruled that the request was not properly before the court because no motion had been noted for hearing.

The trial court agreed with the Respondents' arguments and ruled that they were entitled to summary judgment on all claims. The court entered an order granting the Respondent's motion for summary judgment and dismissing all of the Billings' claims.

The Billings appeal the trial court's summary judgment order.

ANALYSIS

A.    SUMMARY JUDGMENT ORDER

The Billings argue that the trial court erred in granting summary judgment in favor of the Respondents. We disagree.

1.    Standard of Review

We review summary judgment orders de novo. *Sartin v. Estate of McPike*, 15 Wn. App. 2d 163, 172, 475 P.3d 522 (2020). We review all evidence and reasonable inferences in the light most favorable to the nonmoving party. *Id.* If there are genuine issues of material facts, we must overturn an order granting summary judgment. *Id.* "There is a genuine issue of material fact when reasonable minds could disagree on the facts controlling the outcome of the litigation." *Id.*

The moving party has the initial burden of showing no genuine issue of material fact. *Id.* "A moving defendant can meet this burden by demonstrating the plaintiff cannot support his claim with any evidence." *Id.* The burden then shifts to the plaintiff to present specific facts that reveal a genuine issue of material fact. *Id.* "Summary judgment is appropriate if a plaintiff fails to show sufficient evidence that creates a question of fact about an essential element on which he or she will have the burden of proof at trial." *Id.* And the nonmoving party cannot rely on mere allegations or conclusory statements of facts that are unsupported by evidence. *Discovery Bank v. Bridges*, 154 Wn. App. 722, 727, 226 P.3d 191 (2010).

2.    Summary Judgment Record

The Billings argue that the trial court erred by taking the position that their response to summary judgment was not supported by affidavits. The court did note that the Billings' response had no attached declarations or affidavits. This statement was correct. The Billings did not attach any declarations or affidavits to their response, nor did they file any supporting declarations or affidavits with the response. However, the Billings did incorporate by reference Johnita's affidavit in support of the injunction. And the trial court expressly agreed to consider the Billings' response.

Moreover, because our review is de novo and Johnita's affidavit in support of the injunction is in the appellate record, we will consider the affidavit in review of the order granting summary judgement.

3.  No Genuine Issues of Material Fact

The Billings argue that genuine issues of material fact exist that preclude summary judgment. We disagree.

a.  Indorsement of the Note

The Billings argue that the promissory note cannot be enforced as a negotiable instrument because the party that indorsed the note in blank is different from the lender identified in the note. America's Wholesale Lender was identified as the lender in the note, but the note was indorsed in blank by Countrywide Home Loans doing business as America's Wholesale Lender.

If an indorsement is made to a negotiable instrument that does not identify the person to whom the instrument is payable, it is a blank indorsement. RCW 62A.3-205(a)-(b). "When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed." RCW 62A.3-205(b).

The Billings assert that there was no indication on the promissory note that America's Wholesale Lender was the "doing business as" name of another company. However, the Respondents presented undisputed evidence establishing that America's Wholesale Lender was registered as a trade name for Countrywide Home Loans well before the loan documents were executed. Therefore, there is no *genuine* issue as to whether America's Wholesale Lender and Countrywide Home Loans doing business as America's Wholesale Lender were the same entity.

The Billings also suggest that there is a question of fact as to whether the America's Wholesale Lender listed in the promissory note was the same entity as America's Wholesale

Lender, a corporation organized and existing under the laws of New York identified in the deed of trust. But they do not explain how this is a *material* fact that affects the enforceability of the note or supports one of their claims.[4]

b.    CPA and Fraud Claims

The Billings argue that there were genuine issues of material fact on their CPA and fraud claims.[5]  We disagree.

To succeed on a CPA claim, the Billings must establish "(1) an unfair or deceptive act (2) in trade or commerce (3) that affects the public interest, (4) injury to the plaintiff in his or her business or property, and (5) a causal link between the unfair or deceptive act complained of and the injury suffered." *Trujillo v. Nw. Tr. Servs., Inc.*, 183 Wn.2d 820, 834-35, 355 P.3d 1100 (2015).  To establish a claim for fraud, the Billings must establish all nine elements of common law fraud:

> (1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiffs ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff.

*Stiley v. Block*, 130 Wn.2d 486, 505, 925 P.2d 194 (1996).

The Billings do not attempt to address any of the actual elements of a CPA claim or a fraud claim, instead only referring vaguely to Johnita's affidavit.  They apparently base their

---

[4] The Billings separately argue that there are additional factual issues related to America's Wholesale Lender.  However, they do not explain how any of these alleged factual issues are material to their claims.

[5] The Billings also argued that their CPA and fraud claims are not barred by the statute of limitations.  But the Respondents do not argue on appeal that the statute of limitations bars the Billings' claims.  Therefore, we do not address this issue.

claims on the argument that Wilmington Savings Fund did not have the authority to enforce the note or foreclose on the property.

However, because the promissory note was properly indorsed in blank and Wilmington Savings Fund had possession of the note, Wilmington Savings Fund was entitled to enforce it. Under RCW 62A.3-301, the holder of an instrument is entitled to enforce that instrument. A "holder" includes a person who is in possession of a negotiable instrument that has a blank indorsement – an indorsement that does not specify the person to whom the instrument is payable. RCW 62A.1-201(b)(21)(A); RCW 62A.3-205(b); *see Terhune v. N. Cascade Tr. Servs., Inc.*, 9 Wn. App. 2d 708, 723, 446 P.3d 683 (2019).

Further, the Respondents presented an affidavit from Wilmington Savings Fund stating that Wilmington Savings Fund was the holder of the Billings' promissory note. A party's declaration that it is the holder of a promissory note is sufficient proof of holder status. RCW 61.24.030(7)(a); *Brown v. Dep't of Commerce*, 184 Wn.2d 509, 541-42, 547, 359 P.3d 771 (2015). Therefore, there is no genuine issue of material fact that Wilmington Savings Fund could enforce payment of the note.

c.   Claims Against MERS

The Billings argue that the trial court erred in granting summary judgment in favor of MERS. We disagree.

The Billings assert that MERS is subject to the CPA because it was engaged in some form of commerce and that issues of agency are factual questions. They seem to suggest that being designated as the beneficiary on the deed of trust could be considered a deceptive or unfair practice under the CPA.

9

The Billings do not provide any facts establishing how this is an unfair or deceptive practice because they have not shown MERS made misrepresentations about its authority as the beneficiary. *See Bain v. Metropolitan Mortg. Grp., Inc.*, 175 Wn.2d 83, 116-17, 285 P.3d 34 (2012) (designating MERS as a beneficiary is not per se deceptive but has the capacity to deceive if MERS claims authority it does not have or conceals the true parties to the transaction). Here, the Billings have not identified any actions taken by MERS besides simply being designated as the beneficiary in the deed of trust, which is not per se deceptive.

In addition, there is no indication that MERS's designation as the beneficiary of the deed of trust or assignment of that interest caused any injury to the Billings because the authority to foreclose on their property rested in the holder of the note, not the beneficiary of the deed of trust. RCW 62A.3-301. Therefore, the Billings failed to establish a genuine issue of material fact as to their claims against MERS.

### d.    Unilateral Contract Modification

The Billings argue that the trial court improperly granted summary judgment because the transfer of the promissory note unilaterally modified the loan contract. We disagree.

The Billings claim that the promissory note was modified when it was transferred from the original lender, America's Warehouse Lender, to Wilmington Savings Fund. They assert that this transfer changed the essential nature of the obligation from a residential loan transaction to a commercial investment transaction. The Billings argue that genuine issues of material fact exist when one party conceals its modification of the contract from the other party.

However, the Billings have failed to show any actual modification of the loan contract occurred. In her affidavit, Johnita claimed,

> Although the mortgage loan documents claimed that the mortgage loan could be
> sold, my presumption and understanding, as a non-banker and non-lender, was that

any such sale would be to another Federally-regulated residential mortgage lender in order that the loan retain its character as a Federally-regulated residential mortgage loan and that benefits of such a loan, such as the ability to refinance, modify or restructure the loan, and the ability to deal directly with the lender, would be preserved and maintained. I was never advised that the loan could be sold to a non-regulated Trust.

CP at 67-68. But this statement does not identify any terms of the note that were actually modified.

There are no facts in the record that establish the actual terms of the note or the loan contract were modified by the transfer of the note. Therefore, the Billings have failed to establish a genuine issue of material fact as to the alleged unilateral modification of their loan contract.

### e. Summary

We conclude that even viewed in the light most favorable to the Billings, there are no genuine issues of material fact regarding the liability of the Respondents. Therefore, we hold that the trial court did not err in granting summary judgment in favor of the Respondents.

## B. REQUEST TO AMEND COMPLAINT

The Billings argue that the superior court erred by denying their request to amend their complaint. We disagree.

Pierce County Local Rule (PCLR) 7 is a local court rule governing civil motions in Pierce County Superior Court. PCLR 7(a)(3)(A) provides,

Motions shall be scheduled for hearing by filing a Note for Motion Docket, in a form approved by the court, and containing all information required by such form. The Note for Motion Docket shall be filed with the motion and supporting documents and served upon the opposing party at the same time. *The Note for Motion Docket, motion, and supporting documents shall be filed with the Clerk and served on the opposing party no later than the close of business on the seventh court day before the day set for hearing.*

(Emphasis added.) If a motion is not properly noted, filed, and served, the trial court may strike the motion. PCLR 7(a)(4).

Here, the Billings never filed a motion or a note for motion docket scheduling a motion to amend their complaint. And even though the Billings included a request to amend in their response to the Respondents' summary judgment motion, it was not timely filed seven court days before the summary judgment hearing. PCLR 7(a)(3)(A). Therefore, the trial court properly acted within its discretion in striking and refusing to consider the Billings' untimely and improper request to amend their complaint.

## CONCLUSION

We affirm the trial court's order granting summary judgment in favor of the Respondents.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

LEE, C.J.

SUTTON, J.