IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| JAMES C. BLAIR, II, | ) | No. 32816-3-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NORTHWEST TRUSTEE SERVICES, | ) | PUBLISHED OPINION |
| INC., BANK OF AMERICA, N.A., | ) | |
| MORTGAGE ELECTRONIC | ) | |
| REGISTRATION SYSTEMS, INC., | ) | |
| FEDERAL HOME LOAN MORTGAGE | ) | |
| CORPORATION and DOE | ) | |
| DEFENDANTS 1 through 20, | ) | |
| | ) | |
| Respondents. | ) | |

LAWRENCE-BERREY, J. — James C. Blair appeals the trial court's summary

judgment dismissal of his Consumer Protection Act (CPA), chapter 19.86 RCW, and

misrepresentation claims against the respondents. Mr. Blair's claims arise out of a

nonjudicial foreclosure proceeding initiated against his residential property. Mr. Blair

predicates his CPA claims on asserted violations of the Deed of Trust Act (DTA), chapter

61.24 RCW. We hold that Northwest Trustee Services, Inc. (NWTS) violated the DTA

when it relied on an ambiguous beneficiary declaration, but that Mr. Blair failed to

establish that NWTS's violation was causally linked to any injury he suffered. We additionally hold that Mr. Blair's misrepresentation claims lack a factual basis. We therefore affirm the trial court.

## FACTS

In September 2008, James Blair refinanced his mortgage with Countrywide Bank, FSB (Countrywide). Mr. Blair signed a promissory note and a deed of trust that encumbered his Chelan County residence. The deed of trust identifies Land America as the original trustee, Countrywide as the lender, and Mortgage Electronic Registration Systems, Inc. (MERS) as the deed of trust beneficiary. The note likewise identifies Countrywide as the lender, and is endorsed in blank by Countrywide. In August 2010, Mr. Blair became delinquent on his mortgage payments. While Mr. Blair was seeking a loan modification and was more than $34,000 behind on monthly payments, Bank of America, N.A. (BoA) initiated nonjudicial foreclosure proceedings in spring 2012.

According to the Federal Home Loan Mortgage Corporation's (Freddie Mac's) website, it became the owner of Mr. Blair's "mortgage" on September 25, 2008. Clerk's Papers (CP) at 698. BoA has physically possessed Mr. Blair's note "for the benefit of Freddie Mac and in accordance with Freddie Mac guidelines" since that time. CP at 1142. Freddie Mac routinely enters into agreements where home loan promissory notes it

has bought are physically placed in the possession of a document custodian, who may also be the loan servicer. Under Freddie Mac's document custody procedures handbook, the primary duty of the document custodian is to "[h]old Notes and assignments in trust for the sole benefit of Freddie Mac." CP at 1046. Consequently, Freddie Mac and the document custodian "[d]o not enter into any understanding, agreement or relationship with any party to obtain, retain or claim any interest, including ownership or security, in Mortgages owned by Freddie Mac, unless specifically approved in writing, in advance." CP at 1046.

BoA serviced Mr. Blair's loan for Freddie Mac and was authorized "to take all actions necessary for the collection and enforcement of the Loan, including receiving and processing loan payments, communicating with [sic] regarding the loan, and, should such action be necessary, initiating foreclosure, consistent with the Note, Deed of Trust and Freddie Mac servicing guidelines." CP at 853.

After Mr. Blair became delinquent on his payments in August 2010, he applied for a loan modification through BoA in 2011 and early 2012. BoA rejected Mr. Blair's application on the asserted basis that he failed to provide the required documents. Prior to the initiation of the nonjudicial foreclosure proceedings, MERS assigned its interest in Mr. Blair's deed of trust to BoA. In a document dated October 18, 2011, BoA appointed

3

No. 32816-3-III
*Blair v. Nw. Trustee Servs.*

NWTS as the successor trustee of Mr. Blair's deed of trust. The document appointing

NWTS as the successor trustee refers to BoA as the beneficiary, and was publicly

recorded in March 2012.

In March 2012, NWTS issued a notice of default to Mr. Blair. The notice of

default states "[t]he owner of this note is Federal Home Loan Mortgage Corporation

(Freddie Mac)" and "[t]he loan servicer for this loan is Bank of America, N.A." CP at

925. In April 2012, NWTS issued and recorded a notice of trustee's sale, setting a

foreclosure date in August 2012. Prior to issuing the notice of trustee's sale, NWTS

received a beneficiary declaration from BoA that it relied on. The beneficiary declaration

stated:

> [BoA] is the beneficiary (as defined by RCW §61.24.005(2)) and actual
> holder of the promissory note or other obligation secured by the deed of
> trust *or has requisite authority under the RCW 62A.3-301 to enforce said*
> *obligation for the above mentioned loan account.*

CP at 566 (emphasis added).

Shortly before the scheduled trustee's sale, Mr. Blair filed this lawsuit, naming

NWTS, BoA, MERS, and Freddie Mac as defendants. In his complaint, Mr. Blair sought

(1) a temporary restraining order (TRO) and preliminary injunction prohibiting the

trustee's sale, (2) damages under the DTA against NWTS, (3) damages under the CPA

against all defendants, and (4) damages resulting from intentional or negligent

4

misrepresentation against all defendants. The crux of Mr. Blair's complaint was that the defendants misrepresented BoA as the DTA beneficiary, and because BoA was not the DTA beneficiary, it had no lawful authority to appoint NWTS as the successor trustee, and therefore the entire nonjudicial foreclosure was unlawful.

Mr. Blair incurred attorney fees of $5,350.00 in enjoining the trustee's sale. Additionally, Mr. Blair estimated that he incurred costs totaling $890.35 associated with the TRO and preliminary injunction, including missing work at the title insurance company he owns and operates. According to Mr. Blair's counsel, she has brought at least 10 cases against NWTS in the last few years containing similar allegations (and is aware of other attorneys doing the same).

NWTS moved for summary judgment in November 2013, arguing that it complied with the DTA by relying on BoA's beneficiary declaration, and that BoA was the note holder and DTA beneficiary with the power to appoint the successor trustee. NWTS also argued that any damages Mr. Blair incurred were proximately caused by his failure to make his home loan payments, and that he cannot prove he suffered "actual prejudice" relating to the nonjudicial foreclosure. BoA, MERS, and Freddie Mac (represented by the same counsel) also moved for summary judgment in November 2013, similarly arguing that BoA was the DTA beneficiary with the authority to appoint NWTS as the successor

5

trustee. Mr. Blair opposed both summary judgment motions, arguing that the DTA only allows a beneficiary who is also the owner of the note to initiate nonjudicial foreclosure. During the summary judgment hearing, Mr. Blair argued that BoA's beneficiary declaration was also insufficient because BoA had not proved it was in physical possession of the note when the beneficiary declaration was prepared. Consequently, the trial court allowed BoA to submit a supplemental declaration. The supplemental declaration shows that BoA had physical possession of the note at the time the beneficiary declaration was prepared.

The trial court granted summary judgment to all of the defendants. In a memorandum decision, the trial court stated that BoA "actually held the note" based on the "supplemental declaration establishing that it held the note continuously beginning September 25, 2008 as the successor to BAC Home Loans." CP at 1148. The trial court further held that although BoA's beneficiary declaration to NWTS was "insufficient" on its face, BoA "supplemented the record to establish that it in fact held the requisite documents at all relevant times to the attempted foreclosure in this case." CP at 1149. Therefore, BoA "had the authority to appoint NWTS as a successor trustee." CP at 1149. As the trial court concluded that the DTA claim should be dismissed, it likewise dismissed the CPA claim as it was predicated on the alleged DTA violation. Similarly,

6

the intentional and negligent misrepresentation claims were dismissed as "plaintiff has

failed to establish a material false representation by any of the defendants that plaintiff

relied on and proximately caused him damage." CP at 1150. Mr. Blair timely appeals.

ANALYSIS

A.    *Standard of review*

This court reviews an order granting summary judgment de novo. *Lyons v. U.S.*

*Bank NA*, 181 Wn.2d 775, 783, 336 P.3d 1142 (2014). Under de novo review, this court

engages in the same inquiry as the trial court, viewing the facts and all reasonable

inferences in the light most favorable to the nonmoving party. *Id.* (quoting *State v. Reid*,

136 Wn.2d 195, 201, 961 P.2d 333 (1998)). "The object and function of summary

judgment procedure is to avoid a useless trial." *Barber v. Bankers Life & Cas. Co.*, 81

Wn.2d 140, 144, 500 P.2d 88 (1972).

Summary judgment is appropriate only if the record demonstrates there is no

genuine issue of material fact and the moving party is entitled to judgment as a matter of

law. CR 56(c). Judgment as a matter of law for summary judgment purposes is

warranted "if reasonable people could reach one conclusion based on the evidence when

viewing the facts in the light most favorable to the nonmoving party." *O.S.T. v. Regence*

*BlueShield*, 181 Wn.2d 691, 703, 335 P.3d 416 (2014). "A material fact is one upon

7

which the outcome of the litigation depends in whole or in part." *Atherton Condo. Apt.-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990).

"A trial is not useless, but is absolutely necessary where there is a genuine issue as to any material fact." *Barber*, 81 Wn.2d at 144.

The initial burden is on the moving party to show there is no genuine issue of any material fact. CR 56(e). "The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine issue for trial." *Am. Express Centurion Bank v. Stratman*, 172 Wn. App. 667, 673, 292 P.3d 128 (2012). "Mere allegations or conclusory statements of facts unsupported by evidence are not sufficient to establish a genuine issue." *Rucker v. NovaStar Mortg., Inc.*, 177 Wn. App. 1, 10, 311 P.3d 31 (2013). This court "may affirm summary judgment on any grounds supported by the record." *Blue Diamond Grp., Inc. v. KB Seattle 1, Inc.*, 163 Wn. App. 449, 453, 266 P.3d 881 (2011).

B.    *DTA overview*

"The DTA sets up a three party system for mortgages where an independent trustee acts as the impartial party between a lender and a borrower instead of the court." *Lyons*, 181 Wn.2d at 786. A statutory deed of trust is essentially an "equitable mortgage" as it conveys title to the trustee to secure the home loan. *Walker v. Quality Loan Serv. Corp.*, 176 Wn. App. 294, 305, 308 P.3d 716 (2013). "When secured by a deed of trust that

grants the trustee the power of sale if the borrower defaults on repaying the underlying obligation, the trustee may usually foreclose the deed of trust and sell the property without judicial supervision." *Bain v. Metro. Mortg. Grp., Inc.*, 175 Wn.2d 83, 93, 285 P.3d 34 (2012). The DTA strives to serve three main policies: (1) "'the nonjudicial foreclosure process should remain efficient and inexpensive,'" (2) "'the process should provide an adequate opportunity for interested parties to prevent wrongful foreclosure,'" and (3) "'the process should promote the stability of land titles.'" *Id.* at 94 (quoting *Cox v. Helenius*, 103 Wn.2d 383, 387, 693 P.2d 683 (1985)).

When construing a statute, this court's "goal is to determine and effectuate legislative intent." *Swinomish Indian Tribal Cmty. v. Dep't of Ecology*, 178 Wn.2d 571, 581, 311 P.3d 6 (2013). First, this court must "give effect to the plain meaning of the language used as the embodiment of legislative intent" where possible. *Id.* Second, "when technical terms and terms of art are used," this court "give[s] these terms their technical meaning." *Id.* Importantly, the DTA "'must be construed in favor of borrowers because of the relative ease with which lenders can forfeit borrowers' interests and the lack of judicial oversight in conducting nonjudicial foreclosure sales.'" *Bain*, 175 Wn.2d at 93 (quoting *Udall v. T.D. Escrow Servs., Inc.*, 159 Wn.2d 903, 915-16, 154 P.3d 882 (2007)).

9

C.     *CPA liability*

Mr. Blair acknowledges that he is not entitled to bring direct claims for pre-foreclosure violations of the DTA. He therefore asserts that the respondents are liable under the CPA for DTA violations.

The CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. "To succeed on a CPA claim, a plaintiff must establish (1) an unfair or deceptive act (2) in trade or commerce (3) that affects the public interest, (4) injury to the plaintiff in his or her business or property, and (5) a causal link between the unfair or deceptive act complained of and the injury suffered." *Trujillo v. Nw. Trustee Servs., Inc.*, 183 Wn.2d 820, 834-35, 355 P.3d 1100 (2015).

1.     *Unfair or deceptive act*

Under the first element, "[w]hether an act is unfair or deceptive is a question of law." *Id.* at 835. Misrepresenting one's authority as the DTA beneficiary has the capacity to deceive and is therefore an unfair or deceptive act. *Bain*, 175 Wn.2d at 117. Here, Mr. Blair alleges that respondents misrepresented BoA's status as the DTA beneficiary.

10

In addition, a trustee's failure to follow the nonjudical foreclosure procedures of the DTA constitutes an unfair or deceptive act. *Lyons*, 181 Wn.2d at 787. Here, Mr. Blair alleges that NWTS failed to follow the DTA when it relied on an improper beneficiary declaration.

### a.    Status of BoA as beneficiary

The DTA beneficiary has the power to appoint a successor trustee and to instruct the trustee to initiate nonjudicial foreclosure. RCW 61.24.010(2); .020; .030. According to the DTA definitions, a "beneficiary" is "the holder of the instrument or document evidencing the obligations secured by the deed of trust." RCW 61.24.005(2).

Washington's version of the Uniform Commercial Code (UCC), Title 62A RCW, guides the interpretation of what constitutes a holder under the RCW 61.24.005(2) definition of "beneficiary." *Bain*, 175 Wn.2d at 104. Providing the commercial background, the *Bain* court stated:

> Traditionally, the "beneficiary" of a deed of trust is the lender who has loaned money to the homeowner . . . . Lenders, of course, have long been free to sell that secured debt, typically by selling the promissory note signed by the homeowner. [The DTA] recognizes that the beneficiary of a deed of trust at any one time might not be the original lender. The act gives subsequent holders of the debt the benefit of the act by defining "beneficiary" broadly . . . .

11

*Id.* at 88. When the note is sold, "the security instrument will follow the note, not the other way around." *Id.* at 104.

Based on "[a] plain reading of the statute," the *Bain* court concluded "that only the actual holder of the promissory note or other instrument evidencing the obligation may be a beneficiary with the power to appoint a trustee to proceed with a nonjudicial foreclosure on real property." *Id.* at 89. Specifically, the *Bain* court held that MERS could not be a DTA "beneficiary" as "a beneficiary must either *actually possess* the promissory note or be the payee." *Id.* at 104 (emphasis added). "*Bain* thus recognized that holding the note is essential to beneficiary status." *Brown v. Dep't of Commerce*, 184 Wn.2d 509, 539, 359 P.3d 771 (2015).

Washington's UCC defines "holder" as "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." RCW 62A.1-201(21)(A); *see* RCW 62A.3-201. If indorsed in blank, the note "becomes payable to bearer and may be negotiated by transfer of possession alone." RCW 62A.3-205(b).

In *Brown*, the Supreme Court of Washington recently held that the holder of the note under article 3 of the UCC was the DTA beneficiary, despite Freddie Mac owning

12

the beneficial interest of the note. *Brown*, 184 Wn.2d at 514-15. The *Brown* court

provided background on Freddie Mac's involvement in the home loan industry:

> Freddie Mac does not lend to homebuyers. Instead, Freddie Mac purchases mortgage notes from the initial lenders. Often, Freddie Mac pools hundreds of these mortgage notes into a trust, and the trustee issues and sells securities to investors in various tranches of seniority. . . . Freddie Mac guarantees the borrowers' monthly payments on the underlying notes. If a borrower stops paying, Freddie Mac will step in and pay the investors. Freddie Mac does all of this to further its congressionally mandated mission to "provide ongoing assistance to the secondary market for residential mortgages" to thereby "promote access to mortgage credit throughout the Nation" and expand homeownership. 12 U.S.C. § 1716(3), (4).

*Id.* at 521. When Freddie Mac purchases a note, it authorizes the servicer to collect on the

note, negotiate modifications, and foreclose on the note if necessary. *Id.* at 521-22.

"Before the servicer institutes foreclosure proceedings, Freddie Mac provides the servicer

with actual or constructive possession of the original note." *Id.* at 523.

The *Brown* court stated that the definition of "holder" in RCW 62A.1-201(21)(A)

"does not turn on ownership," and "focuses on the party who possesses the note in order

to protect the borrower from being sued fraudulently or by multiple parties on the same

note." *Id.* at 525-26; *accord John Davis & Co. v. Cedar Glen # Four, Inc.*, 75 Wn.2d

214, 222-23, 450 P.2d 166 (1969) ("The holder of a negotiable instrument may sue

thereon in his own name, and payment to him in due course discharges the instrument. . . .

It is not necessary for the holder to first establish that he has some beneficial interest in

the proceeds."). The court noted that "[the servicer] is the holder of [the] note because [the servicer] possesses the note and because the note, having been indorsed in blank, is payable to bearer." *Brown*, 184 Wn.2d at 535-36. Consequently, the *Brown* court concluded that the servicer in possession of the note indorsed in blank was the DTA beneficiary. *Id.* at 540.

Here, prior to the initiation of the nonjudicial foreclosure, BoA physically possessed Mr. Blair's note indorsed in blank. A note indorsed in blank is payable to its bearer. RCW 62A.3-205(b). BoA became the holder by virtue of physically possessing Mr. Blair's note indorsed in blank. RCW 62A.1-201(21)(A); *see* RCW 62A.3-201. For the first time at the summary judgment hearing, Mr. Blair attempted to dispute whether BoA physically possessed the note. However, "[m]ere allegations or conclusory statements of facts unsupported by evidence are not sufficient to establish a genuine issue." *Rucker*, 177 Wn. App. at 10. We therefore conclude that there is no issue of material fact disputing BoA's possession of Mr. Blair's note.

Mr. Blair argues that BoA is not the DTA beneficiary, and is only a document custodian, as it holds the note for Freddie Mac's benefit and follows Freddie Mac's guidelines. However, the Supreme Court of Washington in *Brown* rejected the argument that the DTA beneficiary must also be the owner of the note. *Brown*, 184 Wn.2d 509.

14

Moreover, BoA stated that it was authorized to take actions that a beneficiary would take, such as collecting on the note and initiating nonjudicial foreclosure. Because actual physical possession of the original note indorsed in blank conveys holder status under Washington law, Mr. Blair has not raised a genuine issue of fact regarding BoA's status as the DTA beneficiary. *See Bain*, 175 Wn.2d at 104; *see also Brown*, 184 Wn.2d 509. As a matter of law, because BoA was the beneficiary, the respondents did not misrepresent BoA's DTA beneficiary status, and Mr. Blair has failed to establish CPA liability against any of the respondents based on his first argument.

### b. *NWTS's reliance on a defective beneficiary declaration*

Under the DTA, the trustee is tasked with conducting the nonjudicial foreclosure. RCW 61.24.040. However, "'a trustee is not merely an agent for the lender or the lender's successors.'" *Lyons*, 181 Wn.2d at 787 (quoting *Bain*, 175 Wn.2d at 93). Although not rising to the level of a fiduciary duty, "[t]he trustee or successor trustee has a duty of good faith to the borrower, beneficiary, and grantor." RCW 61.24.010(4). "'A foreclosure trustee must "adequately inform" itself regarding the purported beneficiary's right to foreclose, including, at a minimum, a "cursory investigation" to adhere to its duty of good faith.'" *Trujillo*, 183 Wn.2d at 831-32 (quoting *Lyons*, 181 Wn.2d at 787).

15

The requisites of a trustee's sale are set forth in RCW 61.24.030. Pertinent to this court's analysis, RCW 61.24.030(7)(a) provides:

> That, for residential real property, before the notice of trustee's sale is recorded, transmitted, or served, the trustee shall have proof that the beneficiary is the owner of any promissory note or other obligation secured by the deed of trust. A declaration by the beneficiary made under the penalty of perjury stating that the beneficiary is the actual holder of the promissory note . . . shall be sufficient proof as required under this subsection.

The trustee is entitled to rely on the beneficiary's declaration unless it has violated its duty of good faith. RCW 61.24.030(7)(b); *see Lyons*, 181 Wn.2d at 790 ("if there is an indication that the beneficiary declaration might be ineffective, a trustee should verify its veracity before initiating a trustee's sale to comply with its statutory duty").

The *Trujillo* court discussed the first sentence of RCW 61.24.030(7)(a). It reiterated that a trustee must "have proof that the beneficiary actually *owns* the note on which the trustee is foreclosing." *Trujillo*, 183 Wn.2d at 832. "A trustee must have the requisite proof of the beneficiary's ownership of the note *before* recording, transmitting, or serving the notice of trustee's sale." *Id.* at 834 n.10.

The *Trujillo* court also discussed the second sentence of RCW 61.24.030(7)(a). The *Trujillo* court held that its recent decision in *Lyons* was dispositive. *Trujillo*, 183 Wn.2d at 833. In *Lyons*, the beneficiary declaration stated, "'Wells Fargo Bank, NA, is

16

No. 32816-3-III
*Blair v. Nw. Trustee Servs.*

the actual holder of the promissory note . . . *or has requisite authority under RCW 62A.3-301 to enforce said [note].*'" *Lyons*, 181 Wn.2d at 780 (emphasis added). The *Lyons* court reasoned:

> On its face, [the beneficiary declaration] is ambiguous whether the declaration proves [the purported beneficiary] is the holder or whether [the purported beneficiary] is a nonholder in possession or person not in possession who is entitled to enforce the provision under RCW 62A.3–301. But [the trustee] can still prove that [the purported beneficiary] was the owner of the note in a way other than through the beneficiary declaration referenced in RCW 61.24.030(7)(a). Thus, there remains a material issue of fact as to whether [the purported beneficiary] was the owner prior to initiating the trustee's sale. [The trustee] will need to furnish that proof but may not just rely on this ambiguous declaration.

*Id.* at 791.

Here, BoA's beneficiary declaration stated that it "is the beneficiary (as defined by RCW §61.24.005(2)) and actual holder of the promissory note or other obligation secured by the deed of trust *or has requisite authority under the RCW 62A.3-301 to enforce said obligation for the above mentioned loan account.*" CP at 515 (emphasis added). As acknowledged by the trial court, and consistent with *Trujillo* and *Lyons*, NWTS cannot satisfy its DTA duties by relying on this ambiguous beneficiary declaration.

The trial court allowed BoA to file a supplemental declaration. The supplemental declaration stated that BoA had held the promissory note for all times relevant. Based on this, the trial court excused NWTS's violation. In doing so, the trial court erred.

17

The supplemental declaration came after the fact, and NWTS had to comply with RCW 61.24.030(7)(a)'s proof requirement "*before* recording, transmitting, or serving the notice of trustee's sale." *Trujillo*, 183 Wn.2d at 834 n.10. Because NWTS relied on the ambiguous beneficiary declaration prior to recording, transmitting, or serving the notice of trustee's sale, it violated RCW 61.24.030(7)(a).

2. *Injury to the plaintiff in his business or property*

NWTS argues that Mr. Blair cannot satisfy the injury element of his CPA claim. "Because the CPA addresses 'injuries' rather than 'damages,' quantifiable monetary loss is not required." *Frias v. Asset Foreclosure Servs. Inc.*, 181 Wn.2d 412, 431, 334 P.3d 529 (2014). "The injury element does not require that the homeowner lose their property in order to bring a claim under the CPA." *Lyons*, 181 Wn.2d at 786 n.4. Further an "injury" can be based on unlawful collection practices even where there is no dispute as to the validity of the underlying debt, and the element "can be met even where the injury alleged is both minimal and temporary." *Frias*, 181 Wn.2d at 431. Consequently, attorney fees and costs incurred in enjoining a wrongful trustee's sale may qualify as an "injury" under the CPA. *See Trujillo*, 183 Wn.2d at 837 ("investigation expenses and other costs associated with dispelling the uncertainty about who owns the note" are sufficient); *see also Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 62-63, 204 P.3d

18

885 (2009) (costs to consult an attorney, resulting from a deceptive business practice, establish injury). We conclude that Mr. Blair has satisfied the injury element of his CPA claim by virtue of his expenditure of attorney fees and costs associated with investigating NWTS's authority to initiate foreclosure proceedings.

3.      *Causal link between the unfair or deceptive act complained of and the injury suffered*

NWTS argues that Mr. Blair cannot satisfy the causation element of his CPA claim. To satisfy the causation element, a "plaintiff must establish that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury." *Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 162 Wn.2d 59, 84, 170 P.3d 10 (2007). This requires "a causal link between the misrepresentation and the plaintiff's injury." *Id.* at 83. The existence of a causal link is usually a factual question. *Id.*

Although causation generally is a question of fact, one must nevertheless aver facts that support a causal link. In one declaration, Mr. Blair states that he incurred attorney fees and costs investigating the improper designation of BoA as beneficiary and BoA's resulting improper appointment of NWTS as successor trustee. We have held that BoA was the beneficiary and, as the beneficiary, its appointment of NWTS as successor trustee was not improper. Mr. Blair does not aver that NWTS's violation of RCW

61.24.030(7)(a) caused him any injury. We are unable to locate any facts in the record that support a causal link between NWTS's violation of RCW 61.24.030(7)(a) and Mr. Blair's injury.

Moreover, NWTS's wrongful act was its violation of RCW 61.24.030(7)(a)'s requirement that it investigate BoA's status *prior to* recording, transmitting, or serving the notice of trustee's sale. Had NWTS complied with RCW 61.24.030(7)(a), it would have learned that BoA was the holder of the note indorsed in blank, and that institution of the nonjudicial foreclosure proceeding was arguably proper.[1] Consequently, NWTS's violation of RCW 61.24.030(7)(a) did not cause a wrongful initiation of foreclosure. Because the initiation of foreclosure was not wrongful, Mr. Blair has failed to establish a causal link between NWTS's wrongful act and his injury. We conclude that Mr. Blair has failed, as a matter of law, to establish the causal link element of his CPA claim against NWTS.

4.     *Actual prejudice*

---

[1] "[A]cts or practices performed in good faith under an arguable interpretation of existing law do not constitute unfair conduct violative of the consumer protection law." *Perry v. Island Sav. & Loan Ass'n*, 101 Wn.2d 795, 810, 684 P.2d 1281 (1984); *accord Leingang v. Pierce Co. Med. Bureau, Inc.*, 131 Wn.2d 133, 155, 930 P.2d 288 (1997); *Courchaine v. Commonwealth Land Title Ins. Co.*, 174 Wn. App. 27, 49, 296 P.3d 913 (2012); RCW 19.86.920 ("It is, however, the intent of the legislature that this act shall not be construed to prohibit acts or practices which are reasonable in relation to the

No. 32816-3-III
*Blair v. Nw. Trustee Servs.*

NWTS asks that we require borrowers who bring a CPA claim premised on the wrongful nonjudicial foreclosures to establish that the DTA violation actually prejudiced them. NWTS cites a number of unpublished cases from Washington federal courts to support its request. We see no need to adopt the requested rule. *See Halvorson v. Dahl*, 89 Wn.2d 673, 676, 574 P.2d 1190 (1978). We prefer to base our decision on the prima facie framework of a CPA claim. We note that the failure to establish a causal link between a wrongful act and a borrower's injury would have led to similar results in the federal cases.

D.     *Intentional/negligent misrepresentation liability*

Although Mr. Blair's opening brief refers to his claim as "Intentional and/or Negligent Misrepresentation," he only provides argument relating to negligent misrepresentation. Appellant's Br. at 27. We therefore restrict our analysis to the issue briefed. *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998).

"Washington has adopted the RESTATEMENT (SECOND) OF TORTS with respect to the elements of negligent misrepresentation." *ESCA Corp. v. KPMG Peat Marwick*, 135 Wn.2d 820, 826, 959 P.2d 651 (1998). Each element must be proved by clear, cogent,

---

development and preservation of business . . . .").

21

and convincing evidence. *Lawyers Title Ins. Corp. v. Baik*, 147 Wn.2d 536, 545, 55 P.3d

619 (2002). The *Restatement (Second) of Torts* describes negligent misrepresentation as

> [o]ne who, in the course of his business, profession or employment, or in
> any other transaction in which he has a pecuniary interest, supplies false
> information for the guidance of others in their business transactions, is
> subject to liability for pecuniary loss caused to them by their justifiable
> reliance upon the information, if he fails to exercise reasonable care or
> competence in obtaining or communicating the information.

RESTATEMENT (SECOND) OF TORTS § 552(1) (AM. LAW. INST. 1977), *quoted in*

*Lawyers Title Ins. Corp.*, 147 Wn.2d at 545. In the context of alleged negligent

misrepresentation based on information provided in nonjudicial foreclosure forms,

the threshold concern is whether the forms contained false or misleading

information. *Mann v. Household Fin. Corp. III*, 109 Wn. App. 387, 391-92, 35

P.3d 1186 (2001).

Here, Mr. Blair argues that "Defendant/Appellees supplied false information to

Mr. Blair and the public at large when they indicated through publicly recorded

documents that [BoA], not Freddie Mac, was the beneficiary of Mr. Blair's deed of

trust/promissory note and had the authority to appoint NWTS as a foreclosure trustee."

Appellant's Br. at 28. We have held that BoA, because it is the holder of the note

indorsed in blank, is the DTA beneficiary. As the lawful beneficiary, it had the power to

appoint NWTS to serve as successor trustee. Because Mr. Blair has failed to establish

22

No. 32816-3-III
*Blair v. Nw. Trustee Servs.*

that any entity supplied false information, his negligent misrepresentation claim was

properly dismissed on summary judgment.

Affirmed.

Lawrence-Berrey, J.

WE CONCUR:

Korsmo, J.

Fearing, J.