# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| FLOYD and MARGARET SCOTT, husband and wife, | No. 51742-6-II |
| Appellants, | |
| v. | UNPUBLISHED OPINION |
| ALLY BANK CORP., FEDERAL HOME LOAN MORTGAGE CORPORATION; OCWEN HOME LOAN SERVICING, INC.; AND QUALITY LOAN SERVICES CORP. OF WASHINGTON; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; AND JOHN DOES 1-10, | |
| Respondents. | |

MAXA, C.J. – Margaret and Floyd Scott appeal the trial court's order dismissing the lawsuit they filed against Ally Bank Corp., Mortgage Electronic Registration Systems (MERS), Federal Home Loan Mortgage Corporation (Freddie Mac), Ocwen Home Loan Servicing, and Quality Loan Services Corporation (collectively, defendants).

Margaret Scott executed a promissory note payable to Ally Bank, secured by a deed of trust on Scott's home that named Ally Bank as lender and MERS as nominee for lender and beneficiary. At some point, Freddie Mac became the owner of the note and Ocwen became the loan servicer. Ocwen also became the holder of the note. Ocwen appointed Quality as successor trustee of the deed of trust.

Scott defaulted on the promissory note. When Quality issued a notice of trustee's sale for the home at Ocwen's direction, the Scotts filed a lawsuit to enjoin the foreclosure and asserted claims for violation of the Consumer Protection Act (CPA), chapter 19.86 RCW.[1] The trial court denied the request for an injunction and ultimately dismissed the Scotts' claims under CR 12(b)(6).

The Scotts argue that even though Ocwen was the holder of the promissory note, Ocwen did not have authority to act because it did not also own the promissory note. We hold that the trial court did not err in dismissing the Scotts' lawsuit because as the note holder, (1) Ocwen was authorized to initiate foreclosure proceedings and (2) Ocwen was the beneficiary of the deed of trust and therefore had authority to appoint Quality as successor trustee. Therefore, defendants' conduct did not constitute an unfair or deceptive act or practice under the CPA as a matter of law. Accordingly, we affirm the trial court's dismissal of the Scotts' claims.

FACTS

*Promissory Note and Deed of Trust*

On May 18, 2012, Margaret Scott executed a promissory note for $122,600 in favor of Ally Bank as the lender. The note was secured by a deed of trust on Scott's home in Vancouver, Washington. The note required Scott to make monthly payments beginning July 1, 2012. The note stated that Scott would be in default if she failed to make a monthly payment on the due date. The note later was endorsed in blank by Ally Bank.

---

[1] The Scotts also asserted a tortious interference with business expectancy claim, but on appeal neither party raises any issues relating to the dismissal of that claim. Therefore, we do not address that claim and affirm the dismissal of that claim.

Section 22 of the deed of trust stated, "Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement." Clerk's Papers (CP) at 72. The notice was required to specify the default, the action required to cure the default, the date by which the default must be cured, and that failure to cure may result in acceleration of all sums due and sale of the property at a public auction. Paragraph 22 further provided that, in the event of the Borrower's uncured default, "Lender at its option . . . may invoke the power of sale." CP at 72. "If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold." CP at 72.

At some point after execution of the note and deed of trust, Freddie Mac became the owner of the promissory note secured by the deed of trust. The Scotts agree that Freddie Mac was the owner of the note at all relevant times. On June 29, 2015, MERS assigned the deed of trust to Ocwen.

*Foreclosure Action*

Scott made monthly payments on the mortgage from July 2012 through December 2014, but she failed to make the January 2015 payment or subsequent payments.

On November 30, 2016, Ocwen appointed Quality as successor trustee. The appointment referred to Ocwen as "the present Beneficiary, the actual holder of the promissory note secured by the Deed of Trust." CP at 94. On the same date, Ocwen issued a Declaration of Holder of Note (Beneficiary Declaration), which was a sworn statement by Ocwen's contract management coordinator that Freddie Mac was the owner of the note secured by the deed of trust and that Ocwen was the actual holder of the note.

In December 2016, Quality sent Scott a notice of default. The notice stated that Freddie Mac was the creditor on the loan, Ocwen was the servicer of the loan, and that Scott owed over $20,000 in overdue payments, late charges, and advances on the loan.

In February 2017, Quality recorded a notice of trustee's sale for June. The notice stated that Scott had until May 29, 2017 to cure the default by paying the amount then owing.

*Scotts' Lawsuit*

On May 26, 2017, the Scotts filed a lawsuit against the defendants. The Scotts asserted claims for damages under the CPA and for tortious interference with a business expectancy. They claimed that Ocwen had improperly initiated foreclosure proceedings, Quality had never lawfully been appointed successor trustee, and Freddie Mac had colluded with Ocwen and Quality in the foreclosure. The Scotts filed a motion for a preliminary injunction, which was denied.

At some point, the Scotts apparently paid the arrearages on the note and reinstated the note and deed of trust. Quality recorded a notice of discontinuance of trustee's sale in August 2017.

Freddie Mac, Ocwen, and MERS filed a motion to dismiss under CR 12(b)(6).[2] They argued that the Scotts' claims under the CPA should be dismissed because they failed to establish an unfair or deceptive act, injury, or causation. The trial court granted the motion to dismiss.

The Scotts appeal the trial court's order dismissing their CPA claim.

---

[2]Ally Bank filed a separate motion to dismiss the Scotts' complaint under CR 12(b)(6), which the trial court granted after the Scotts failed to respond.

ANALYSIS

A. LEGAL PRINCIPLES

1. Standard of Review – CR 12(b)(6)

We review de novo a trial court's ruling on a CR 12(b)(6) motion to dismiss. *Wash. Trucking Ass'ns v. Emp't Sec. Dep't*, 188 Wn.2d 198, 207, 393 P.3d 761 (2017). Dismissal is appropriate where it appears beyond doubt that a plaintiff will be unable to prove any set of facts that would justify recovery. *Id.* We assume the truth of the allegations in the plaintiff's complaint and may consider hypothetical facts not included in the record. *Id.*

Under CR 12(b)(6), the trial court generally can consider only the allegations contained in the complaint and cannot look beyond the face of the pleadings. *Jackson v. Quality Loan Serv. Corp.*, 186 Wn. App. 838, 844, 347 P.3d 487 (2015). If the trial court considers information outside the complaint, the motion must be converted to a summary judgment motion under CR 56. *McNamara v. Koehler*, 5 Wn. App. 2d 708, 713, 429 P.3d 6 (2018), *review denied*, 192 Wn.2d 1021 (2019).

However, a trial court can consider certain types of outside information on a CR 12(b)(6) motion, including: (1) documents specifically referenced in the complaint but not attached; and (2) through judicial notice, public documents if their authenticity cannot reasonably be disputed. *Jackson*, 186 Wn. App. at 844. In addition, a trial court can consider information outside of the complaint without converting a CR 12(b)(6) motion to a summary judgment motion if "the 'basic operative facts are undisputed and the core issue is one of law.' " *Trujillo v. Nw. Tr. Servs., Inc.*, 183 Wn.2d 820, 827 n.2, 355 P.3d 1100 (2015) (quoting *Ortblad v. State*, 85 Wn.2d 109, 111, 530 P.2d 635 (1975)).

Here, the Scotts' complaint referenced the promissory note, deed of trust, notice of assignment from Ally Bank to GMAC Mortgage, notice of default, assignment of deed of trust from MERS to Ocwen, and Ocwen's appointment of Quality as successor trustee. These documents were attached to the Scotts' motion for a preliminary injunction, which was filed at the same time as the complaint. The trial court properly considered these documents.

The defendants attached a number of documents in opposition to the Scotts' motion for a preliminary injunction, including an endorsed copy of the promissory note, Ocwen's Declaration of Holder of Note, and the notice of trustee's sale. The defendants later submitted the notice of discontinuance of trustee's sale. The court stated that it was taking judicial notice of "the documents present in the record." Report of Proceedings (March 16, 2018) at 20. The Scotts did not object to this judicial notice of documents, and therefore the trial court properly considered these additional documents.

We review the trial court's order under the CR 12(b)(6) standard, considering the allegations in the Scotts' complaint as well as the documents that the trial court considered.

2. Nonjudicial Foreclosure

The Deed of Trust Act (DTA), chapter 61.24 RCW, "provides an alternative to judicial foreclosure by allowing for the private sale of foreclosed property." *River Stone Holdings NW, LLC v. Lopez*, 199 Wn. App. 87, 92, 395 P.3d 1071 (2017). The underlying deed of trust creates three distinct roles: a lender, a borrower, and a trustee who holds the deed as security for the lender. *Id.* at 93. If the borrower defaults on the obligations owed to the lender, the trustee may foreclose on the property in a trustee's sale. *Id.*; RCW 61.24.030(3)[3].

---

[3] RCW 61.24.030 was amended in 2018. Because those amendments do not impact the statutory language relied on by this court, we cite to the current version of the statute.

The DTA provides detailed procedures under RCW 61.24.030, .031, and .040 for foreclosing a deed of trust and conducting a trustee's sale. "If a trustee fails to strictly comply with the DTA, the trustee lacks statutory authority to conduct a trustee's sale and any such sale is invalid." *Terhune v. N. Cascade Tr. Servs., Inc.*, 9 Wn. App. 2d 708, 718, 446 P.3d 683 (2019).

3. CPA Claim

The Scotts' asserted cause of action is a violation of the CPA. The CPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful." RCW 19.86.020. To succeed on a CPA claim, the Scotts must establish "(1) an unfair or deceptive act (2) in trade or commerce (3) that affects the public interest, (4) injury to the plaintiff in his or her business or property, and (5) a causal link between the unfair or deceptive act complained of and the injury suffered." *Trujillo*, 183 Wn.2d at 834-35. Whether an act is unfair or deceptive under the CPA is a question of law. *Id.* at 835.

The Scotts apparently paid the arrearages on the note and reinstated the note and deed of trust, and the trustee's sale was discontinued in August 2017. Damages are not recoverable *under the DTA* if no foreclosure sale has occurred. *Lyons v. U.S. Bank Nat. Ass'n*, 181 Wn.2d 775, 784, 336 P.3d 1142 (2014). However, a CPA claim may be maintained in that situation based on a violation of the DTA. *Id.* at 784-85. As a result, the Scotts could assert a CPA claim based on defendants' wrongful conduct during a nonjudicial foreclosure process, even without a completed foreclosure sale. *Trujillo*, 183 Wn.2d at 834.

B. ALLEGED UNFAIR AND DECEPTIVE PRACTICES

The Scotts' briefs do not explicitly address the CPA, but they claim that the defendants engaged in conduct that violated the DTA. To prevail under their CPA claim, the Scotts must establish that the defendants engaged in unfair or deceptive acts. Therefore, we treat the Scotts'

claims regarding unlawful conduct under the DTA as claims that the defendants engaged in unfair or deceptive acts.

The Scotts provide a number of arguments that address a single claim: that because Ocwen was merely the holder and not the owner of the promissory note, Ocwen did not have the authority to initiate foreclosure proceedings and did not have authority to appoint Quality as successor trustee. We reject these claims.

1. Ocwen's Authority to Initiate Foreclosure Proceedings

The Scotts argue that a holder of a promissory note who is not also the note's owner cannot initiate foreclosure proceedings. We disagree.

a. Freddie Mac and Loan Servicer

The Supreme Court in *Brown v. Department of Commerce* explained how Freddie Mac does business. 184 Wn.2d 509, 520-23, 359 P.3d 771 (2015). Freddie Mac purchases mortgage notes from the original lenders, and often pools them with other notes into a trust. *Id.* at 521. Freddie Mac then compensates another entity to service the loan, and controls the actions of the servicer through a detailed handbook. *Id.* If the borrower defaults on a loan, Freddie Mac's handbook authorizes the servicer to initiate foreclosure proceedings in the servicer's own name. *Id.* at 522.

In order to give the servicer legal authority to foreclose, Freddie Mac requires that notes be endorsed in blank, and possession of the note is transferred to the servicer. *Id.* at 522-23. But Freddie Mac still owns the note. *Id.* at 523.

b. Authority of Holder

Under RCW 61.24.005(2), the beneficiary of a deed of trust is the holder of the instrument secured by that deed of trust. RCW 62A.3-301 provides that the holder of an

instrument is entitled to enforce that instrument, and "[a] person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument." *See Brown*, 184 Wn.2d at 525. "Washington's deed of trust act contemplates that the security instrument will follow the note." *Bain v. Metro. Mortg. Group, Inc.*, 175 Wn.2d 83, 104, 285 P.3d 34 (2012). As a result, "[t]he DTA beneficiary has the power to appoint a successor trustee and to instruct the trustee to initiate nonjudicial foreclosure." *Blair v. Nw. Tr. Servs., Inc.*, 193 Wn. App. 18, 31, 372 P.3d 127 (2016). "[O]nly the actual holder of the promissory note . . . may be a beneficiary with the power to appoint a trustee to proceed with a nonjudicial foreclosure." *Bain*, 175 Wn.2d at 89.

A "holder" includes a person who is in possession of a negotiable instrument that is payable to "bearer." RCW 62A.1-201(b)(21)(A). When a holder makes a blank endorsement – an endorsement that does not specify the person to whom the instrument is payable – that instrument is treated as payable to bearer. RCW 62A.3-205(b); *see Terhune*, 9 Wn. App. 2d at 723. A party's declaration that it is the holder of a promissory note is sufficient proof under the DTA of holder status. RCW 61.24.030(7)(a); *Brown*, 184 Wn.2d at 541-42, 547.

In *Brown*, the court confirmed that the beneficiary of a deed of trust is the holder of the promissory note secured by that deed of trust, not the owner of the note. 184 Wn.2d at 540. This court has interpreted *Brown* as compelling the conclusion that the note holder has the authority to initiate foreclosure proceedings even when the holder is not also the note owner. *River Stone Holdings*, 199 Wn. App. at 97.

Here, Ally Bank endorsed Scott's promissory note in blank. Therefore, the person in possession of the note was the holder under RCW 62A.1-201(b)(21)(A). Ocwen issued a "Declaration of Holder of Note (Beneficiary Declaration)," a sworn statement that Ocwen was

9

the actual holder of the note. Therefore, as holder of the note, Ocwen was entitled under RCW 62A.3-301 and *Brown* to initiate foreclosure proceedings on the deed of trust.

      c.   Scotts' Arguments

The Scotts make a number of detailed arguments to support their position that a person must be both the owner and holder of a promissory note to initiate foreclosure proceedings. We reject these arguments.

First, the Scotts argue that the court in *Brown* was incorrect when it stated that a note holder can enforce a deed of trust without also being the note owner. The Scotts state:

> [I]n Washington, as in practically every other non-judicial foreclosure state, the myth that the *security follows the note doctrine* means the security follows a transfer of <u>the right to enforce the note</u>, regardless of note ownership, currently prevails. *RCW 61.24.030(7)(a)*; *Brown v. Department of Commerce*, 184 Wn.2d 509 (2015). Destroying this destructive myth is one of the primary goals of this brief.

Br. of Appellant at 20. The Scotts also urge this court to be "open to the *possibility*, however infinitesimal the possibility is in the Court['s] . . . mind, that *Brown* was wrongly decided." Br. of Appellant at 25.

Contrary to *Brown*, the Scotts claim that the security follows the *sale* of the note, not the transfer of the right to enforce the note. As a result, they contend that only the owner of a note can initiate foreclosure proceedings. They rely on an analysis of RCW 62A.9A-203(a), (b), and (g), regarding the attachment and enforcement of security interests. They also rely on RCW 62A.9A-109(a)(3), which states that chapter 62A.9A RCW applies only to *sales* of promissory notes.

However, we are bound to follow the Supreme Court's rulings in *Brown*. *River Stone Holdings*, 199 Wn. App. at 97. In addition, the court in *Brown* expressly discussed RCW

62A.9A-203 and RCW 62A.9A-109(a) in its analysis. 184 Wn.2d at 528-29. Therefore, we decline the Scotts' invitation to disregard *Brown*.

Second, the Scotts argue that under section 22 of the deed of trust, only the lender could initiate foreclosure proceedings. They point out that under RCW 61.24.030(3), one of the requirements for a trustee's sale is that a default has occurred in the secured obligation, "which by the terms of the deed of trust makes operative the power to sell." The Scotts emphasize that section 22 provided that the "Lender" (1) must give notice of acceleration that specifies the default and the ability to cure, (2) upon default may "invoke the power of sale and/or any other remedies permitted by Applicable Law," and (3) shall give notice to the trustee of the default and the lender's election to cause the property to be sold. CP at 72. The Scotts argue that until the *lender* – not some other party – performs all of these steps, there can be no default and therefore no foreclosure.

According to the Scotts, Ocwen had no authority to initiate foreclosure proceedings because it was not the "lender" referenced in the deed of trust. They acknowledge that section 13 of the deed of trust extends the benefits of the the deed of trust's agreements to the lenders "successors and assigns." CP at 69. But the Scotts claim that Ocwen was not Freddie Mac's successor or assign, but was merely the holder of the note.

However, as the court noted in *Brown*, Freddie Mac authorizes loan servicers like Ocwen to foreclose on loans that are in default. 184 Wn.2d at 522. As a result, Ocwen clearly was acting as Freddie Mac's agent when it initiated foreclosure proceedings against Scott's property. The Scotts argue that the deed of trust did not authorize the lender to act through an agent. That may be true, but the deed of trust also does not prohibit acting through an agent. The court in *Bain* stated that nothing in its opinion "should be construed to suggest an agent cannot represent

11

the holder of a note. Washington law, and the deed of trust act itself, approves of the use of agents." 175 Wn.2d at 106. The same rule applies to allow Freddie Mac as the lender's successor and assignee and owner of a note to act through Ocwen.

Third, the Scotts argue that because Ocwen was not a party to or third party beneficiary of the deed of trust, it could not enforce that deed of trust. However, RCW 62A.3-301 expressly states that the holder of a promissory note is entitled to enforce that note. The Scotts cite no authority for the proposition that only a party to a deed of trust can initiate foreclosure proceedings to enforce the note the deed of trust secures.

We hold that Ocwen did not violate the DTA or otherwise engage in unfair and deceptive acts by initiating foreclosure proceedings as the holder of Scott's note.

2. Quality's Appointment as Successor Trustee

The Scotts argue that Ocwen did not lawfully appoint Quality as successor trustee of the deed of trust because Freddie Mac, not Ocwen, was the beneficiary of the promissory note. We disagree.

RCW 61.24.010(2) authorizes the beneficiary of a promissory note to appoint a successor trustee of the deed of trust. As discussed above, Ocwen was the holder of Scott's promissory note and therefore under settled law was the beneficiary of that note. RCW 61.24.005(2); *Brown*, 184 Wn.2d at 540.

The Scotts argue that Freddie Mac was the beneficiary of the deed of trust under the terms of the deed of trust. They claim that the deed of trust conveyed rights to the lender, not to the holder. In addition, the Scotts note that section 24 of the deed of trust states that the *lender* may appoint a successor trustee. However, as discussed above, Ocwen was acting on behalf of Freddie Mac in appointing the successor trustee and proceeding with foreclosure.

We hold that Ocwen did not violate the DTA or otherwise engage in unfair and deceptive acts by appointing Quality as successor trustee.

3.    Summary

We hold that the Scotts failed to establish an unfair act or practice under the CPA. Accordingly, we hold that the trial court did not err in granting defendants' motion to dismiss with regard to the Scotts' CPA claim.[4]

C.    CONSTITUTIONALITY OF 2018 AMENDMENT TO RCW 61.24.030(7)(a)

The Scotts argue that the 2018 amendment to RCW 61.24.030(7)(a) violates Article 1, Section 10 of the United States Constitution and Article 1, Section 23 of the Washington Constitution, or alternatively that RCW 61.24.030(7)(a) renders unenforceable the power of sale clause in the deed of trust.  We decline to address this issue.

In 2018, the legislature amended RCW 61.24.030(7)(a) by replacing "owner" with "holder" as follows:

> That, for residential real property, before the notice of trustee's sale is recorded, transmitted, or served, the trustee shall have proof that the beneficiary is the ((owner)) holder of any promissory note or other obligation secured by the deed of trust.  A declaration by the beneficiary made under the penalty of perjury stating that the beneficiary is the ((actual)) holder of ((the)) any promissory note or other obligation secured by the deed of trust shall be sufficient proof as required under this subsection.

LAWS OF 2018, ch. 306, § 1.

However, the effective date of this amendment was June 7, 2018.  LAWS OF 2018 at ii. The trial court's order of dismissal was entered on March 16, 2018.  Therefore, the amendment

---

[4] The defendants also argue that the Scotts failed to allege injury or causation under the CPA. Because we hold that the Scotts failed to establish an unfair or deceptive act, we do not consider these issues.

had no bearing on the trial court's order and is immaterial to this appeal. We do not give advisory opinions. *Gunn v. Riely*, 185 Wn. App. 517, 532, 344 P.3d 1225 (2015).

D.      ATTORNEY FEES ON APPEAL

The defendants request attorney fees on appeal under the deed of trust. We decline this request.

Generally, attorney fees will be awarded only when authorized by contract, statute, or recognized ground of equity. *Podbielancik v. LPP Mortg. Ltd.*, 191 Wn. App. 662, 673, 362 P.3d 1287 (2015). Section 26 of the deed of trust states, "Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument." CP at 73.

However, the issue in this appeal is not the enforcement of the deed of trust. Instead, the appeal involves the Scotts' CPA claim based on an alleged violation of the DTA. The CPA claim only tangentially relates to the deed of trust. Accordingly, we deny the defendants' request for attorney fees.

CONCLUSION

We affirm the trial court's CR 12(b)(6) dismissal of the Scotts' claims.

No. 51742-6-II

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

MAXA, C.J.

We concur:

MELNICK, J.

GLASGOW, J.